[No. 50819-9-I.   Division One.   May 24, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL D. GAINES, *Appellant*.

---

*Jennifer L. Dobson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Catherine M. McDowall, Deputy,* for respondent.

BECKER, J. — Appellant Gaines, sentenced for a drug offense he committed in 1999, asks why the prosecutor was not required as a matter of equal protection to stipulate to an exceptional sentence below the standard range, as was done for a class of defendants who committed similar crimes in 2002 shortly before a more lenient sentencing law went into effect. We question whether any stipulated exceptional sentence downward may lawfully be imposed without the entry of crime-specific findings of fact. But even if such sentences are lawful, as Gaines and the State both contend they are, the State had a rational basis for refusing to stipulate with Gaines; unlike the benefited defendants, he put the State to the expense of a trial instead of pleading guilty. His equal protection claim fails and his conviction is affirmed.

Michael Gaines took part in a drug sale to an undercover police officer on February 2, 1999. The State charged him with delivery of a controlled substance within a school bus stop route. A jury convicted him on June 22, 1999.

At the time of Gaines' offense, a sentencing statute known as the tripling provision required that his two prior delivery convictions be scored as three each in determining his offender score. As a result of the tripling provision, and the seriousness level of eight, the standard sentencing range for his offense was 108-144 months. With the school bus zone enhancement, the standard range was 132-168 months.

Gaines requested that the court allow him the benefit of a newly enacted statute providing a sentencing alternative

for drug offenders. The drug offender sentencing alternative provides for a court to sentence eligible offenders to serve up to half of their standard range sentence in a community based treatment program. This new statute, approved by the governor on May 7, 1999, went into effect on July 25, 1999. Laws of 1999, ch. 197, § 4. This was after the date of Gaines' drug sale, but before he was sentenced. Sentencing occurred on September 28, 1999. The sentencing court ruled, over the State's objection, that the new statute could be used in sentencing for crimes committed before the effective date because it was remedial in nature. Applying the new statute, the court sentenced Gaines to 75 months in confinement and 75 months in community custody.

Gaines appealed his conviction. The State cross-appealed as to the sentence. We affirmed Gaines' conviction but remanded for resentencing as requested by the State on the cross-appeal.[1] We followed *State v. Kane*, 101 Wn. App. 607, 5 P.3d 741 (2000). Because Gaines' offense occurred before the effective date of the new statute, and the legislature did not express an intent to apply the new statute retroactively, Gaines had to be resentenced based on the law as it existed on the day he committed the crime. *Kane*, 101 Wn. App. at 611.

By the time of the resentencing hearing, the legislature had enacted another amendatory statute reducing the harshness of penalties for certain drug offenses. This statute reduced the seriousness level of a delivery conviction from eight to seven and eliminated the tripling provision. Laws of 2002, ch. 290, § 2, 3, 29. The statute became effective on July 1, 2002. If this statute applied to Gaines, his standard range would be 91-113 months, not 132-168 months. But, under *Kane*, this 2002 statute could have no application to the sentencing of Gaines for the offense he committed in 1999.

Nevertheless, when Gaines came before the court for resentencing on June 28, 2002, he argued that the standard

---

[1] *State v. Gaines*, noted at 108 Wn. App. 1034 (2001) (unpublished opinion).

range of 132-168 months was clearly excessive in light of the 2002 amendment that did away with the tripling provision. He asked the court to impose an exceptional sentence downward within the range of 91-113 months. The State, again relying on *Kane*, insisted that Gaines be sentenced according to the laws in effect at the time Gaines participated in the drug sale.

Gaines pointed out that the prosecutor had adopted a policy of recommending that some defendants, whose drug offenses occurred before the effective date of the 2002 amendment, be sentenced as if that new legislation applied to them. A plea bargaining policy announced by the King County Prosecutor's Office on April 5, 2002[2] acknowledged that in some cases the elimination of the tripling provision "will result in a dramatically reduced standard sentence range."[3] Gaines argued that he, too, should be sentenced as though the new law were already in effect. The trial court rejected this argument and denied Gaines' request for an exceptional sentence downward. The court imposed a standard range sentence of 132 months.

In this appeal, Gaines argues that the King County prosecutor violated his right to equal protection of the laws because, unlike the defendants covered by the prosecutor's policy, he did not have the benefit of a recommendation for a sentence below the standard range.

The prosecutor's policy of stipulating to a sentence below the standard range was available only to defendants whose alleged drug offenses occurred between April 1 and June 30, 2002. April 1 was the date the governor signed the bill and July 1 was the date it would go into effect. To take advantage of the prosecutor's policy, a defendant had to plead guilty as charged and stipulate to boilerplate findings of fact and conclusions of law proposed by the prosecutor in support of an exceptional sentence down. The stipulation reflected the State's theory that the purposes of the Sen-

---

[2] Clerk's Papers at 106-08.

[3] Clerk's Papers at 107.

tencing Reform Act of 1981, chapter 9.94A RCW, would be served by giving effect to the new law on the date the governor signed the bill, rather than the date it went into effect. The findings of fact as proposed by the prosecutor were as follows:

1. Based upon an incident that occurred on _____, 2002, the defendant was charged with

   () Delivery of () heroin / () cocaine.

   () Possession with Intent to Deliver () heroin / () cocaine.

2. The Defendant are (sic) unaware that the defendant has any prior adult convictions or juvenile adjudications for a "serious violent offense" or a "sex offense" in Washington State or elsewhere. The parties agree that any subsequent discovery of such a conviction will not be grounds to set this agreement aside, but that the State may rely upon such convictions in any future sentencings.

3. The defendant has taken responsibility for his/her actions by pleading guilty to this offense prior to setting the case for trial. In addition, as outlined in the plea agreement, the defendant has knowingly, voluntarily and intelligently stipulated to the agreed exceptional sentence recommendation and criminal history (See Personal Restraint of Breedlove, 138 Wn.2d 298, 979 P.2d 417 (1999). These actions resulted in the State (Courts, Public Defenders and Prosecutors) saving substantial resources.

4. On April 1, 2002, Governor Locke signed legislation that will have a significant impact on the standard sentencing ranges for certain VUCSA [Violation of Uniform Controlled Substances Act] defendants charged with Delivery or Possession with Intent to Deliver Cocaine or Heroin, for crimes occurring on or after July 1, 2002. For offenders who have not been convicted of either a "sex offense" or "serious violent offense," this legislation will result in (1) a reduced "seriousness level" (moving from an 8 to a 7 on the grid) and (2) abandoning use of the "tripler" provision for prior VUCSA delivery or possession with intent to deliver offenses, and the "doubling" provision for the same juvenile adjudications.

5. This legislation represents the current views of our State government, insofar as sentencing ranges for certain VUCSA cases are concerned.

6. The parties to this case agree that the purposes behind the Sentencing Reform Act [SRA] will be enhanced if, for purposes of this case, the defendant is provided the benefits of the new legislation now, in light of the fact that his/her crime occurred on or after the date the Governor signed this legislation.

## II. AGREED CONCLUSIONS OF LAW

The parties agree to, and the Court adopts, the following conclusions of law (there are no disputed "conclusions of law") that, when considered collectively, constitute a "substantial and compelling reason" to depart from the standard sentencing range and impose an exceptional sentencing in this case:

1. The parties and Court agree that an exceptional sentence downward is appropriate in this case (Personal Restraint of Breedlove, 138 Wn.2d 298, 979 P.2d 417 (1999); because:

A. As indicated by the plea agreement in this case, which is incorporated by reference, the defendant has taken responsibility for his/her conduct by:

   (1) pleading guilty prior to setting this case for trial; and

   (2) agreeing to his/her criminal history and sentencing range; and

   (3) agreeing not to pursue an exceptional sentence in this case, *other than* the agreed exceptional sentence outlined herein;

B. The defendant has stipulated in the plea agreement, and attachments thereto, that an exceptional sentence is appropriate; and

C. The defendant's actions, as outlined in Section 1(A), above, have resulted in significant savings to the State; and

D. The defendant would otherwise qualify to be sentenced under the "new" sentencing scheme (e.g., no prior "serious violent or sex offenses"), had his crime occurred on or after July 1, 2002; and

E. The purposes of the SRA are to "make the criminal justice system accountable to the public", "promote respect for the law by providing punishment which is just", impose punishment that is "commensurate with the punishment imposed on others committing similar offenses," and make frugal use of the State's resources. (RCW 9.94A.010 et.

seq.) These purpose[s] would be served by basing the defendant's sentence upon the date the legislation, outlined above, *was signed* rather than the date of its implementation.

F.  In this case, to effectuate the agreed upon sentence, the parties agree that the defendant's sentencing range should be calculated using a "seriousness level" of 7, rather than 8, for the current offense.

G.  Furthermore, the parties agree that the "Tripler" provision (or Juvenile "doublers" provision) for all prior VUCSA convictions for Delivery of Heroin or Cocaine, Possession with Intent to Deliver Heroin or Cocaine, or Delivery of a Material in Lieu of a Controlled Substance ("Bunk"), should not be used, and that any/all of these prior convictions should be scored as 1 point.

H.  The Court finds that all of these reasons, when considered collectively, constitute a "substantial and compelling" reason to impose an exceptional sentence in this case of _____ months in ( ) jail / ( ) prison. The additional conditions of these sentences are included in the attached Judgment and Sentence.[4]

Gaines was not eligible to negotiate for an exceptional sentence below the standard range under the terms of the prosecutor's policy because his crime occurred in 1999, long before the enactment of the 2002 amendment. And because he had already gone to trial he was no longer in a position to save the State's resources by pleading guilty. But from Gaines' point of view it was unfair for the State to treat him differently from the defendants who committed their crimes between April 1 and June 30, 2002:

If this law were in effect today it would greatly reduce the length of Michael Gaines' presumptive sentence range. . . . Clearly, this new legislative approach has Michael Gaines' situation in mind. All of the foregoing the State would agree to recommend if only Michael Gaines' offense date was April 1, 2002 or later.[5]

---

[4] Clerk's Papers at 109-13.

[5] Clerk's Papers at 66.

Gaines asks that his sentence be reversed and remanded for resentencing in accordance with the current drug sentencing provisions. The only issue he has asked us to decide is whether the King County prosecutor's policy violates equal protection.

## CONTRACT SENTENCING

■ In the course of deciding the issue raised by Gaines, we have wrestled with a different issue: Does a stipulation by the State and a defendant permit a trial court to impose an exceptional sentence below the standard range for a typical drug offense, when such a sentence would clearly be unlawful without the stipulation? Neither party has raised this issue, but a reviewing court has discretion to consider an issue the parties would prefer not to discuss when the matter in question involves the public interest. *See Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 622-23, 465 P.2d 657 (1970) (reviewing court may consider, although not raised below, questions as to the right of one of the parties to waive compliance with the provisions of a mandatory statute); *City of Seattle v. McCready*, 123 Wn.2d 260, 268, 868 P.2d 134 (1994) (reviewing court may consider an unbriefed legal issue that presents itself with "disquieting obtrusiveness" upon examination of the record, especially if parties are given the opportunity for supplemental briefing). The supplemental briefing provided by the defendant and the State upon this court's request shows they are united in their belief that the law allows trial courts to impose sentences below the standard range if the State requests it, even though such a sentence would not otherwise be lawful. When the prosecutor and defendant both agree that an exceptional sentence downward is appropriate, neither party will be motivated to appeal the sentence, and consequently the issue of the lawfulness of the sentence is unlikely to come before us for review.

■ Sentencing as a matter of individual contract between the State and a particular defendant inevitably leads

to disparity in sentencing from county to county, from court to court within a county, and from case to case within a court. It thus appears incompatible with a statutory sentencing scheme designed to ensure that punishment in a particular case is "commensurate with the punishment imposed on others committing similar offenses." RCW 9.94A.010(3). The Sentencing Reform Act of 1981 specifically provides that its sentencing guidelines and prosecuting standards "apply equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant." RCW 9.94A.340.

Stipulated sentences may constitute an improper intrusion into legislative prerogatives when they come about as the result of a prosecutor recommending, and a court agreeing, that the appropriate punishment for an unexceptional crime is less than what is provided by legislatively-approved guidelines. We are concerned about the implications of this practice for the integrity of the Sentencing Reform Act.

The Sentencing Reform Act provides a structure that allows for judicial discretion, but within parameters established by the legislature. The length of the sentence for every felony conviction will ordinarily fall within a standard range approved by the legislature. RCW 9.94A.505; *see State v. Ammons*, 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796 (1986). The standard range is "a legislative determination of the applicable punishment range for the crime as ordinarily committed." *State v. Parker*, 132 Wn.2d 182, 186-87, 937 P.2d 575 (1997). When imposing sentence, a trial court may depart from the standard range only if it finds, considering the purposes of the statute, that there are substantial and compelling reasons supported by evidence in the record. RCW 9.94A.535; *State v. Smith*, 82 Wn. App. 153, 160-61, 916 P.2d 960 (1996). Whether reasons given by the trial court justify an exceptional sentence is a question of law. *State v. Gaines*, 122 Wn.2d 502, 509, 859 P.2d 36 (1993). The reasons given "must relate to the crime and

make it more, or less, egregious" than is typical for that type of crime. *State v. Fowler*, 145 Wn.2d 400, 404, 38 P.3d 335 (2002). *See also State v. Hodges*, 70 Wn. App. 621, 625-26, 855 P.2d 291 (1993). An exceptional sentence is appropriate only when the circumstances of the crime distinguish it from other crimes of the same statutory category. *State v. Pennington*, 112 Wn.2d 606, 610, 772 P.2d 1009 (1989).

The prosecutor's policy does not require that there be anything in the circumstances of the defendant's conduct to distinguish it from other drug offenses. The prosecutor's policy has its roots not in *Pennington*, and the long line of cases following it, but in *In re Personal Restraint of Breedlove*, 138 Wn.2d 298, 979 P.2d 417 (1999). In *Breedlove*, where the charge was first degree murder, the defendant received an exceptionally long sentence to which he had stipulated as part of a plea bargain whereby he pleaded guilty to lesser crimes and avoided getting a third strike. He then brought a personal restraint petition challenging the exceptional sentence as unauthorized by law because the trial court, instead of entering findings of fact detailing substantial and compelling reasons for imposition of the exceptional sentence upward, had simply accepted the stipulation. The Supreme Court dismissed the petition and held that "a stipulation to an exceptional sentence, made as part of a valid plea agreement, may be a substantial and compelling reason that justifies the imposition of a sentence outside the standard range." *Breedlove*, 138 Wn.2d at 300.

In order to justify a stipulated sentence under *Breedlove*, the trial court has no obligation to find evidence of circumstances making the crime more or less egregious than typical. The trial court need find only "that the sentence is consistent with the purposes of the SRA." *Breedlove*, 138 Wn.2d at 310. The Supreme Court held that where the parties agree that an exceptional sentence is justified, "the purposes of the SRA are generally served by accepting the agreement as a substantial and compelling reason for

imposing an exceptional sentence." *Breedlove*, 138 Wn.2d at 309.

The Sentencing Reform Act of 1981 (Act) has the following purposes:

> The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:
>
> (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
>
> (2) Promote respect for the law by providing punishment which is just;
>
> (3) Be commensurate with the punishment imposed on others committing similar offenses;
>
> (4) Protect the public;
>
> (5) Offer the offender an opportunity to improve him or herself;
>
> (6) Make frugal use of the state's and local governments' resources; and
>
> (7) Reduce the risk of reoffending by offenders in the community.

RCW 9.94A.010. Early in the history of judicial interpretation of the Act, the Supreme Court ruled that a trial court could not properly justify an exceptional sentence simply by declaring that it would serve the purposes of the Sentencing Reform Act. *State v. Pascal*, 108 Wn.2d 125, 736 P.2d 1065 (1987). In that case, the trial court attempted to justify an exceptionally low sentence by finding that it would be proportionate to the offender's criminal history; that it was sufficient to protect the public; that it would recognize the offender's willingness and ability to improve herself; and that sending her to prison would not be a frugal use of the state's resources. The Supreme Court rejected these justifications and held that the standard sentence ranges established for each crime "represent the legislative judgment" as to how the purposes of the Act shall best be accommo-

dated. *Pascal*, 108 Wn.2d at 137. "The trial court's subjective determination that these ranges are unwise, or that they do not adequately advance the above goals, is not a substantial and compelling reason justifying a departure." *Pascal*, 108 Wn.2d at 137-38.

Without overruling, distinguishing, or mentioning *Pascal*, *Breedlove* allows trial courts to do what *Pascal* forbids. So long as the prosecutor and the defendant agree on an exceptional sentence, a trial judge may subjectively determine that the agreed sentence advances the goals of the Act better than a standard range sentence would.

This theoretical conflict is perhaps reconcilable in cases like *Breedlove*, where a defendant who faces serious charges agrees to plead guilty to lesser charges, and to accept a sentence above the standard range, in order to avoid the possibility of conviction on the more serious charges that are pending. Because the circumstances of the offense in *Breedlove* gave rise to a spectrum of charges on which the defendant might be convicted, there was also a spectrum of lawful sentences that might result from a conviction. *Breedlove* gives the parties the flexibility to contract for an exceptional sentence within that spectrum without strictly complying with the obligation to enter crime-specific findings of fact.

But *Breedlove* also permits a sentence below the standard range to be imposed merely because the parties agree that a lesser sentence will be an appropriate punishment. Thus, the analytical difficulty of reconciling *Pascal* and *Breedlove* becomes more pronounced in a case where a factual basis exists to support only one charge, such as delivery of drugs.

The prosecutor's policy in the present case illustrates the possibilities of concern to us. The judgment of the legislature was that in sentencing for convictions on drug deliveries committed before July 1, 2002, the tripling provision should apply in all but exceptional cases. Under the prosecutor's policy and *Breedlove*, the legislative judgment would not necessarily be consistently given effect. In unexceptional cases where a defendant agreed to plead guilty to

delivery and the State stipulated to an exceptional sentence, some trial judges could find that eliminating the tripling provision best fulfills the purposes of the Act, while others could adhere to the legislative judgment and refuse to accept the stipulation. The resulting disparity in sentencing for an unexceptional drug delivery conviction would undermine the legislative judgment that *Pascal* carefully preserved. We therefore question whether any exceptional sentence downward imposed upon the type of stipulation described in the prosecutor's policy could be lawful under the Sentencing Reform Act.

And while the policy at issue in this particular case defines only a small class of defendants who are eligible for favorable treatment, theoretically *Breedlove*'s permission to dispense with crime-specific findings of fact is unlimited. In any case, or class of cases, where a prosecutor and a trial court happen to agree that the standard range is too long, they can override the legislative judgment and allow the defendant to receive a shorter sentence. The point can be illustrated by reference to the facts in *State v. Freitag*, 127 Wn.2d 141, 896 P.2d 1254 (1995). There, a defendant who had no prior criminal history was charged with vehicular assault. The standard range called for a jail sentence of three to nine months, but the trial court imposed an exceptional sentence consisting entirely of community service in recognition of the defendant's altruistic past. The Supreme Court reversed and remanded for imposition of a standard range sentence. "Although sentencing within the standard range may at times appear unnecessary or even unjustified, it is the function of the judiciary to impose sentences consistent with legislative enactments." *Freitag*, 127 Wn.2d at 144. It appears that under *Breedlove*, the sentence imposed by the trial court in *Freitag* would have been affirmed if the State had agreed to recommend it. It is unclear to us how the Act permits a prosecutor to create disparity in sentencing in this manner when the Act has been consistently, and appropriately, construed as denying the trial courts the authority to do so.

The State defends the plea policy as "largely consistent with legislative intent and a major shift in public policy with respect to sentencing for certain drug cases."[6] The courts, however, must enforce the details of the Sentencing Reform Act and the legislature must be able to have confidence that the courts will do so. As *Pascal* held, we are not free to let sentencing decisions be guided by subjective perceptions of policy. However much we may applaud a retreat from the unremittingly punitive guidelines for drug offenses that were in effect when Gaines committed his offense, it is for the legislature—not for the State or the courts—to decide when more lenient and flexible guidelines will go into effect. *State v. Kane*, 101 Wn. App. 607, 617-18, 5 P.3d 741 (2000).

We express these concerns because approval of sentencing by stipulation creates a loophole in the Sentencing Reform Act that is largely invisible. The prosecutor can negotiate a stipulation to an exceptional sentence downward as part of any plea; the trial court can accept the stipulation and enter findings of fact and conclusions of law that are not crime specific but merely state that the sentence serves the purposes of the Sentencing Reform Act; the defendant will be pleased to receive a sentence below the standard range; and because neither party has an incentive to appeal, there will ordinarily be no appellate review.

Both parties have asked us not to state a holding on the lawfulness of exceptional sentences that might be imposed under the policy. The State cautions that

> generally speaking, the intricacies of the prosecutor's decisions of whether and how to plea bargain are not subjects of proper inquiry for the appellate courts. In essence, this is a political, rather than a legal question. The prosecutor had the authority to implement this policy; defendants had the authority to accept or reject plea offers and no person or institution has objected.[7]

---

[6] Suppl. Br. of Resp't at 14.

[7] Suppl. Br. of Resp't at 15.

Without question, a prosecutor's decision whether to file charges or plea bargain is an executive function. *State v. Finch*, 137 Wn.2d 792, 809, 975 P.2d 967 (1999). But the fixing of legal punishments for criminal offenses is a legislative function. *State v. Ammons*, 105 Wn.2d at 180. Prosecutorial, judicial and legislative functions overlap when the State agrees to recommend a sentence outside the standard range and a trial court imposes the sentence without finding particularized reasons justifying the departure. Any resulting conflict, though indeed political by its very nature, is not thereby immune from judicial review. "The question to be asked is not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another." *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975).

We conclude there is serious question as to whether contracting for exceptional downward sentences invades the prerogatives of the legislative branch and undermines the integrity of the Sentencing Reform Act. Nevertheless, to so hold would have no effect on the sentence imposed on Gaines, who was not sentenced under the policy. And given the nonadversarial posture of the parties in this case as to this issue, it is difficult to imagine and flesh out all of the possible repercussions of stipulated downward sentences. For these reasons we refrain at this time from stating a holding on the issue we have raised. We proceed to decide the case based only on our analysis of the equal protection issue raised by Gaines in his original brief.

## EQUAL PROTECTION

We first emphasize that Gaines does not locate the source of the alleged equal protection violation in a statute. Nor does he locate it in any decision made by the court. He does not argue, for example, that the court was obliged by the equal protection clause to impose a reduced sentence. He presents no evidence that any court has ever actually

imposed downward exceptional sentences as proposed by the prosecutor's policy. His argument focuses exclusively on the State's decision, as reflected in the policy, to give some drug offenders the retroactive benefit of the current sentencing law while denying that benefit to him.

■ ■ Under the equal protection clause of the Fourteenth Amendment and article I, section 12 of Washington's Constitution, persons similarly situated with respect to the legitimate purpose of the law must receive like treatment. *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992). Disparity in sentencing does not typically raise equal protection concerns. *See State v. Handley*, 115 Wn.2d 275, 286-87, 796 P.2d 1266 (1990). Before the court will engage in an equal protection analysis, a defendant must first establish that he is similarly situated with other persons in a class. In *Handley*, three codefendants were convicted of a conspiracy that ended with the robbery and murder of an elderly woman. *Handley*, 115 Wn.2d at 277-78. Handley, unlike his two codefendants, received an exceptional sentence upward. He alleged an equal protection violation based on the fact that his codefendants were sentenced within the standard range, albeit for different offenses. The court found that because of differences in the role Handley played in the crime, he was not similarly situated to his codefendants, and therefore the difference in sentencing was not subject to equal protection scrutiny. *Handley*, 115 Wn.2d at 291-92.

The State contends that Gaines' claim is not subject to equal protection scrutiny because he is not similarly situated with other defendants who, under the prosecutor's policy, were entitled to receive the benefit of a plea bargain recommendation for an exceptional sentence downward. This approach unfairly excludes Gaines by definition; it is as if the court in *Handley* had defined the relevant class as consisting only of Handley's codefendants. Just as the class considered in *Handley* included Handley and his codefendants, Gaines' equal protection argument defines a class that includes both him and the defendants covered by the

prosecutor's policy. This broader class consists of defendants convicted of committing a drug offense in King County while the tripling provision was in effect, whose crimes were unexceptional, and who therefore would normally expect to receive sentences calculated by use of the tripling provision. Gaines is similarly situated to others in this class and therefore is entitled to equal protection scrutiny.

■ A valid law, administered in a manner that unjustly discriminates between similarly situated persons, violates equal protection. *Handley*, 115 Wn.2d at 289. We apply rational basis review because there are no factors triggering a more intensive scrutiny of the challenged action. *See State v. Manussier*, 129 Wn.2d 652, 672-73, 921 P.2d 473, *cert. denied*, 520 U.S 1201 (1997). The question is whether the policy unjustly discriminates against Gaines by allowing certain other defendants in the class, but not him, to obtain the benefit of a stipulated recommendation for an exceptional sentence.

The State advances three bases for distinguishing Gaines from defendants eligible under the prosecutor's policy: (1) his crime was committed before April 1, 2002; (2) he did not plead guilty; and (3) he requested an exceptional sentence.

■ The State argues that April 1, 2002 is a legitimate point at which to draw the line because the governor signed the bill on that date. We disagree. The legislature has unequivocally stated that any sentence imposed under the Sentencing Reform Act shall be in accordance with the law in effect when the offense was committed. LAWS OF 2000, ch. 26 § 2. *See also* RCW 10.01.040; *State v. Kane*, 101 Wn. App. 607, 5 P.3d 741 (2000). The law that repealed the tripling provision did not go into effect until July 1, 2002. To the extent the prosecutor's policy is based on a view that a new state sentencing policy becomes effective on the date the governor signs the bill, it lacks a rational basis.

■ However, the other lines drawn by the policy which have the effect of excluding Gaines from its benefits are sufficient to survive rational basis scrutiny. One purpose of

the policy was to save substantial state resources. Consistent with this stated goal, a defendant had to agree to plead guilty before trial in order to be eligible for an exceptional sentence recommendation. A defendant also had to agree not to seek an exceptional sentence other than as outlined in the policy.

By the time Gaines appeared for resentencing in July 2002, it was too late for him to meet these requirements. He had already gone to trial in 1999 instead of pleading guilty. And after his trial he sought and obtained an exceptional sentence, causing the State to incur the additional expense of its successful appeal.

Gaines contends that in 2002 he was still in a position to save the State's resources by agreeing not to advocate for any other reduction in sentence and also by forgoing further appeals. Perhaps such agreements would have been of some benefit to the State, but not as much benefit as an agreement that would save the expense of a trial and eliminate any argument about the sentence. It was not irrational for the prosecutor to decide that only the greater benefit to the State would justify extending such a favorable sentencing recommendation.

The goal of saving the State's resources was rationally related to the means employed in the prosecutor's policy—a stipulation to a reduced sentence recommendation in exchange for a pretrial guilty plea. Gaines' equal protection challenge to the prosecutor's policy fails.

The sentence is affirmed.

BAKER and KENNEDY, JJ., concur.