IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 80024-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHARMARKE ABDI-ISSA, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Charmarke Abdi-Issa beat his girlfriend's dog to death in a bank parking lot. A jury convicted him of domestic violence animal cruelty in the first degree with a "foreseeable impact" on others aggravator. Abdi-Issa appeals his exceptional sentence based on the aggravator. He also appeals the State's designation of his case as domestic violence and the resulting domestic violence no-contact order. We conclude that the plain language of the applicable statutes does not support application of the aggravator for the exceptional sentence or the domestic violence designation, and remand for resentencing and to vacate the postconviction domestic violence no-contact order.

FACTS

Abdi-Issa and Julie Fairbanks met in summer 2018 and dated for a few months. Fairbanks owned a "Chiweenie" dog named Mona.[1] Mona was

---

[1] A "Chiweenie" is a mixed breed Chihuahua and dachshund dog. The record includes several versions of the dog's name. The charging documents call the dog "Mona," while the reports of proceedings use "Mona," "Monica," and a phonetic spelling of "Monyaka." Fairbanks testified that her dog's name was "Monica" and that "Mona" was one of several nicknames.

Fairbanks' "baby," whom she loved very much and "spoiled."  Mona did not like Abdi-Issa, and Abdi-Issa did not want Mona around.  He threatened to kill both Fairbanks and her dog twice.  Fairbanks became concerned about Abdi-Issa's treatment of Mona when she found "two gashes on her head" after Mona spent time alone with Abdi-Issa.

On the night of October 17, 2018, Abdi-Issa and Fairbanks were sitting in a parked car in downtown Seattle with Mona.  Abdi-Issa pressured Fairbanks to let him take Mona for a walk so they could "bond."  Fairbanks said no, but Abdi-Issa left with the dog anyway.

Melissa Ludin and William Moe were leaving a nearby grocery store when they heard a dog yelping in "intense distress."  The sound came from a nearby bank parking lot, where they saw a man, later identified as Abdi-Issa, beating Mona.  They watched as Abdi-Issa kicked Mona "hard enough to go into the air" and land in some bushes.  He continued to kick and hit her repeatedly.  Mona was yelping and screaming in pain.  Ludin called 911.  Moe yelled at Abdi-Issa to stop hitting the dog and Abdi-Issa responded with a threat "like, do you want some."  Eventually Mona "went from just wild, painful sounds, to silence."  Abdi-Issa then walked away and appeared to make a cell phone call.

Abdi-Issa called Fairbanks to say that Mona "got loose or something."  He told Fairbanks that Mona "got away" and that he could not find her.  Fairbanks questioned Abdi-Issa but he would not give her a "straight answer" about what happened.

When police officers arrived, Ludin pointed to Abdi-Issa, who was walking away. The police saw Abdi-Issa carrying a cell phone and a dog leash. As the police approached, Abdi-Issa dropped the leash. Abdi-Issa told an officer that Mona had been fighting with two "really huge" rats in the park near the bank and that he had tried to coax her out of the bushes with a stick. He claimed that Mona got out of her leash and that he "was just really trying to help the dog," but he could not, so he left to find Fairbanks.

One officer went looking for Mona. At Ludin's direction, the officer found Mona in a bush near the bank parking lot. The dog could blink "very slowly" and whimper faintly but was otherwise "motionless." A K-9 unit officer arrived and transported Mona to an emergency veterinary hospital.

On arrival at the emergency room, Mona was alive but "basically comatose." "She had some changes with her eyes which were consistent with brain trauma or swelling in her brain." Despite treatment efforts, Mona died within 20 minutes of arriving at the hospital. A necropsy showed multiple areas of external bruising; several rib fractures, including two ribs "completely snapped in half"; a fractured liver; and bruising to the right lung and tissue between the spine and kidney.[2] A veterinary anatomic pathologist concluded that internal hemorrhaging from "multiple blunt force trauma to various parts of the body" caused Mona's death. The pathologist did not "find any evidence of animal bites" on Mona.

---

[2] The necropsy also showed two large cuts on the top of Mona's head.

3

The State charged Abdi-Issa with animal cruelty in the first degree with a domestic violence designation. It also alleged two aggravating factors—that the offense was "a destructive and foreseeable impact on persons other than the victim," namely, Ludin; and that it was an aggravated domestic violence offense because Fairbanks and Abdi-Issa were "in a dating relationship" and Abdi-Issa's conduct "manifested deliberate cruelty or intimidation of the victim."

Abdi-Issa moved to dismiss the domestic violence designation and both aggravating factors. The trial court denied the motion, concluding that sufficient facts supported the domestic violence designation and the alleged aggravators. Abdi-Issa moved to reconsider, which the court denied.

At trial, Abdi-Issa moved to dismiss the charge after the State rested its case in chief. He also renewed his motion to dismiss the domestic violence designation and two aggravating factors. The trial court denied the motions. The jury convicted Abdi-Issa of first degree animal cruelty and found that the crime involved the aggravating circumstance of "a destructive and foreseeable impact on persons other than the victim."[3] But the jury did not find that the crime was "an aggravated domestic violence offense."

Before sentencing, Abdi-Issa moved to arrest the judgment, arguing that the destructive and foreseeable impact aggravator "does not apply to victimless crimes and the [S]tate did not prove that any person was the victim of the underlying offense." The court denied the motion. The court imposed an

---

[3] Ludin testified that seeing Abdi-Issa beat Mona to death was "a traumatic event that has really just . . . stuck with me," including "[v]isual flashbacks," nightmares, insomnia, panic attacks if she hears "a high pitch squeaky sound the way that I heard the dog screaming," and "feeling hypervigilant" about "my own safety and the people around me" when she walks on the street.

4

exceptional sentence above the 12-month standard range of 18 months of confinement. The court also issued a separate postconviction domestic violence no-contact order under chapter 10.99 RCW restricting Abdi-Issa from contacting Fairbanks.[4]

Abdi-Issa appeals.

ANALYSIS

Exceptional Sentence

The court imposed an exceptional sentence based on the jury's finding of a destructive and foreseeable impact on persons other than the victim because of the lasting emotional effects on Ludin. Abdi-Issa argues that the law does not justify an exceptional sentence because the aggravator requires a crime with a "human victim." The State contends that the plain language of the aggravator does not limit its application in this case. We agree with Abdi-Issa.

A trial court may impose an exceptional sentence if it finds "substantial and compelling reasons" to justify punishment beyond the standard range. RCW 9.94A.535; State v. Gaines, 121 Wn. App. 687, 697, 90 P.3d 1095 (2004). A jury's determination that an "[a]ggravating [c]ircumstance[ ]" exists is a "substantial and compelling reason[ ]" to impose an exceptional sentence. RCW 9.94A.535(3).

We review the meaning and applicability of a statutory aggravating factor as a matter of law. State v. Davis, 182 Wn.2d 222, 229, 340 P.3d 820 (2014). Statutory interpretation is a question of law we review de novo. State v. Hayes,

---

[4] The judgment and sentence also directed Abdi-Issa to have no contact with Ludin and Moe. This is not an issue on appeal.

182 Wn.2d 556, 560, 342 P.3d 1144 (2015). When seeking to determine and implement the intent of the legislature, we first look to the plain language of the statute. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Our inquiry ends if the plain language of the statute is unambiguous. Armendariz, 160 Wn.2d at 110.

RCW 9.94A.535(3)(r) is an aggravating circumstance that supports imposing an exceptional sentence if a jury finds that the "offense involved a destructive and foreseeable impact on persons other than the victim." The legislature defines "victim" as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(54). So, under the plain language of RCW 9.94A.535(3)(r) and .030(54), the aggravator applies only if the victim of the charged crime is a person.

Here, the charged crime is animal cruelty in the first degree. A person is guilty of first degree animal cruelty when

> except as authorized in law, he or she intentionally (a) inflicts substantial pain on, (b) causes physical injury to, or (c) kills an animal by a means causing undue suffering or while manifesting an extreme indifference to life.

RCW 16.52.205(1). RCW 16.52.205(9)(a) defines "animal" as "every creature, either alive or dead, other than a human being." Under the plain language of RCW 16.52.205, the object of animal cruelty is the animal that suffered pain, injury, or death at the hands of the defendant. Because the object of animal cruelty is not a person, the "foreseeable impact" aggravator does not apply to the charge.

The State argues that "the victims of Abdi-Issa's animal cruelty include [both] Fairbanks and her dog." Citing the definition of "victim" under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the State contends Fairbanks is also a victim of Abdi-Issa's cruelty to Mona because "as a direct result of the crime charged, [Fairbanks] personally sustained emotional and psychological injury and because the crime was carried out against her property." See RCW 9.94A.030(54). But the definition of "victim" under the SRA does not apply to the charge of animal cruelty, which the legislature codified in the prevention of cruelty to animals act, chapter 16.52 RCW. That chapter does not include the term "victim" at all. The plain language of RCW 16.52.205 describes only the animal experiencing pain, injury, or death as the object of the crime, not its owner. "We cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003).

We also disagree that Fairbanks' ownership of Mona makes Fairbanks a victim of animal cruelty under chapter 16.52 RCW. It is true that in Washington, we consider pets personal property as a matter of law. Sherman v. Kissinger, 146 Wn. App. 855, 870, 195 P.3d 539 (2008). But the legislature has created specific crimes to protect pet owners from damage to their property. See RCW 9A.48.070, .080, .090 (first, second, and third degree malicious mischief); RCW 9.08.070 (intent to defraud owner of a pet is a gross misdemeanor). The State chose not to charge Abdi-Issa with any of those crimes. In contrast, the animal cruelty statute punishes a defendant for causing pain and suffering to only an

7

animal. Indeed, the animal cruelty statute does not mention a human owner. See RCW 16.52.205. The statute serves its purpose whether or not a human owns the animal. See State v. Paulson, 131 Wn. App. 579, 585, 128 P.3d 133 (2006) (first degree animal cruelty statute applied to killing a stray dog).

We conclude the aggravating circumstance in RCW 9.94A.535(3)(r) does not apply to the charge of first degree animal cruelty as a matter of law and cannot justify the exceptional sentence imposed in this case. See Davis, 182 Wn.2d at 231-32. We remand for the trial court to vacate the aggravator and resentence Abdi-Issa accordingly.[5]

### Domestic Violence Designation

Abdi-Issa contends that the trial court erred in denying his motion to dismiss the State's designation of his charge as domestic violence under RCW 10.99.020. We agree.

As discussed above, we interpret statutes de novo to determine and implement the intent of the legislature. See Armendariz, 160 Wn.2d at 110. We begin with the plain language of the statute. See Armendariz, 160 Wn.2d at 110. We may also examine " 'all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.' " State v. Bunker, 169 Wn.2d 571, 578, 238 P.3d 487 (2010)[6] (quoting Chadwick Farms Owners Ass'n v. FHC LLC, 166 Wn.2d 178, 186, 207 P.3d 1251 (2009)).

---

[5] Because we conclude that RCW 9.94A.535(3)(r) does not apply to the charge of animal cruelty as a matter of law, we do not reach Abdi-Issa's challenges to the factual application of the aggravator or the trial court's denial of Abdi-Issa's motion to arrest judgment.

[6] Internal quotation marks omitted.

The legislature enacted the domestic violence act, chapter RCW 10.99, "to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." RCW 10.99.010. The legislature sought to correct "policies and practices of law enforcement agencies and prosecutors which have resulted in differing treatment of crimes occurring between cohabitants and of the same crimes occurring between strangers." RCW 10.99.010. The domestic violence act allows the trial court to prioritize scheduling in designated domestic violence cases, issue pretrial no-contact orders, and "impose specialized no-contact orders, violation of which constitutes a separate crime." State v. Hagler, 150 Wn. App. 196, 201, 208 P.3d 32 (2009); State v. O'Conner, 119 Wn. App. 530, 547, 81 P.3d 161 (2003), aff'd, 155 Wn.2d 335, 119 P.3d 806 (2005); see RCW 10.99.040.

The prosecuting authority often designates a crime as "domestic violence" in charging documents. But "the designation need not be proved to a jury." Hagler, 150 Wn. App. at 201. Rather, a trial court may make the finding because the designation does not alter the elements of the underlying offense.[7] State v. O.P., 103 Wn. App. 889, 892, 13 P.3d 1111 (2000).

---

[7] Below, the parties mistakenly referred to 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 2.27, at 85 (4th ed. 2016) (WPIC), defining "family or household member," and "Special Verdict Form A," asking the jury to determine whether Abdi-Issa and Fairbanks were members of the same family or household, as "relating to" the domestic violence designation. Instead, WPIC 2.27 and Special Verdict Form A related to only the State's allegation that Abdi-Issa committed an "aggravated domestic violence offense" to support imposing an exceptional sentence. See State v. Felix, 125 Wn. App. 575, 577, 105 P.3d 427 (2005) (A jury must find a crime amounts to "domestic violence" only if it "increases the defendant['s] potential punishment."). The jury rejected that allegation.

9

The definition of "domestic violence" includes "but is not limited to" a list of several crimes committed by "one family or household member against another family or household member." Former RCW 10.99.020(5) (2004).[8] While the list of crimes does not include animal cruelty, the plain language of the statute leaves discretion to designate unlisted crimes as domestic violence so long as the crime is "committed by one family or household member against another." Former RCW 10.99.020(5). The definition of "family or household members" includes the following "persons":

> [S]pouses, former spouses, persons who have a child in common regardless of whether they have been married or have lived together at any time, adult persons related by blood or marriage, adult persons who are presently residing together or who have resided together in the past, persons sixteen years of age or older who are presently residing together or who have resided together in the past and who have or have had a dating relationship, persons sixteen years of age or older with whom a person sixteen years of age or older has or has had a dating relationship, and persons who have a biological or legal parent-child relationship, including stepparents and stepchildren and grandparents and grandchildren.

Former RCW 10.99.020(3). Here, Abdi-Issa committed the crime of animal cruelty against Mona, not Fairbanks. Mona was not a "person." Under the plain language of former RCW 10.99.020, Mona was not a "family or household member."

Even so, the State argues that the domestic violence designation should apply to this case because "Abdi-Issa committed animal cruelty as an act of domestic violence to control and inflict emotional abuse on Fairbanks." We

---

[8] The legislature has amended RCW 10.99.020 three times since Abdi-Issa committed the crime in 2018. LAWS OF 2019, ch. 46, § 5014; LAWS OF 2019, ch. 263, § 203; LAWS OF 2020, ch. 296, § 5. The current definition of "domestic violence" adds crimes committed by "one intimate partner against another intimate partner." RCW 10.99.020(4).

agree that Fairbanks was likely the "ultimate target" of Abdi-Issa's cruelty to Mona. But the language of chapter 10.99 RCW limits the domestic violence designation to crimes committed by one household member against another. Former RCW 10.99.020(5). While Abdi-Issa likely intended that Fairbanks suffer because of his crime, he committed the crime of animal cruelty against Mona.

We conclude that the trial court erred in instructing the jury as to the "foreseeable impact" aggravator and imposing an exceptional sentence based on the aggravator. The court also erred in denying Abdi-Issa's motion to dismiss the State's domestic violence designation. We remand to vacate the aggravator, the domestic violence designation, and the resulting separate postconviction domestic violence no-contact order, and to resentence Abdi-Issa accordingly.

_____
Bowman, J

WE CONCUR:

_____        _____
Smith, J.                       Andrus, A.C.J.

11