**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**February 25, 2013**

# In the Court of Appeals of Georgia

A12A2249. GRADY v. THE STATE.

RAY, Judge.

After a jury trial, Anthony James Grady was convicted of a misdemeanor charge of theft by shoplifting.[1] Grady appeals the denial of his motion for new trial, contending that the evidence adduced at trial was insufficient to support his conviction. Finding no error, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia,*[2] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as

---

[1] OCGA § 16-8-14.

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)

there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[3]

So viewed, the record shows that Grady and a friend, Yolanda Hartsfield, entered a Wal-Mart store in Lilburn on September 4, 2010. Hartsfield brought two racquetball racquets into the store, intending to return or exchange them. Hartsfield showed the racquets to an employee at the entrance of the store. The employee scanned the racquets and handed her two yellow return stickers with a barcode on them. Hartsfield carried the racquets into the store, and she and Grady perused the store independently of each other. Grady went to the store's sports department and picked up two tennis racquets that were bigger and more expensive than the racquets Hartsfield sought to return. Grady and Hartsfield met up again in the candle aisle of the store, and Hartsfield placed the racquetball racquets on a shelf of that aisle and gave Grady the yellow stickers. Grady then brought the two more expensive tennis racquets to the customer service desk and attempted to return them using the yellow stickers. The customer service employee who handled the return testified that Grady

---

[3] (Citation and punctuation omitted.) *Gaskins v. State*, 318 Ga. App. 8 (733 SE2d 338) (2012).

"got kind of hysterical" and angry when she informed him that the items he was attempting to return did not match the items reflected on the barcode of his yellow return stickers. The yellow stickers indicated that Hartsfield and Grady brought two racquetball racquets with a total value of about $33 into the store, and Grady attempted to return two tennis racquets with a different brand name that cost $66. The employee then spoke with an assistant manager, David Suber, who reviewed the surveillance video with Wal-Mart's loss prevention team and determined that Grady had not entered the store with the more expensive tennis racquets. Suber then contacted the police and instructed the customer service employee to give Grady a Wal-Mart gift card valued at $68 in exchange for the racquets. When Grady left the store, he was approached by Wal-Mart employees and asked to step inside the store, where they began an investigation.

In his sole enumeration of error, Grady contends that the evidence was insufficient to support his conviction because there was insufficient proof that he intentionally accepted a Wal-Mart gift card worth more than the cost of the two racquetball racquets. Specifically, Grady argues that the State could not prove the element of intent because he testified that, due to his glaucoma-induced poor

3

eyesight, he was unable to read the receipt handed to him by the cashier, and thus, he had no way of knowing that he had received a credit of $68 instead of $33.

The crime of theft by shoplifting is defined, in relevant part, as follows:

A person commits the offense of theft by shoplifting when such person alone or in concert with another person, with the intent of appropriating merchandise to his or her own use without paying for the same or to deprive the owner of possession thereof or of the value thereof, in whole or in part, does any of the following: (1) [c]onceals or takes possession of the goods or merchandise of any retail store or establishment.[4]

The State did not have to prove that Grady knew that the gift card he received was valued at $68 to convict him of shoplifting. This Court has held that, to prove intent, it is enough to show that a defendant made "false statements that the merchandise had been paid for and [carried] the merchandise around the store alone,"[5] and the fact that a defendant "attempt[ed] to obtain a 'refund' or merchandise voucher is simply additional evidence of this intent."[6] Further, although Grady testified that he was unaware that he had received a gift card reflecting the value of the more expensive

---

[4] OCGA § 16-8-14 (a) (1).

[5] *Gilliam,* supra at 480 (3).

[6] Id.

racquets, "a jury is authorized to believe or disbelieve all or any part of the testimony of witnesses[,]" and "as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[7] Accordingly, we find that the evidence presented here was sufficient to enable a rational trier of fact to find Grady guilty beyond a reasonable doubt of the offense of theft by shoplifting.[8]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[7] (Citations and punctuation omitted.) *Knight v. State*, 311 Ga. App. 367, 368 (1) (715 SE2d 771) (2011).

[8] See *Gilliam*, supra at 480 (3). Accord *Alford*, supra at 515 (1) (a); *Foster v. State*, 192 Ga. App. 720 (386 SE2d 383) (1989).