IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31891-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHANTELL M. (SIMONTON) GRAHAM, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

BROWN, J. — The State of Washington appeals the dismissal of Chantell

Graham's trafficking in stolen property charge. The State contends sufficient evidence

showed Ms. Graham sold or transferred stolen property to another person. We

disagree, and affirm.

## FACTS

Ms. Graham entered the Ephrata Walmart store with an empty shopping cart and

placed two television wall mount kits and a battery for a motorized toy-vehicle in her

cart. She then took the less expensive of the wall mount kits and the battery to

customer service and asked to return them, claiming to have recently purchased them.

Because she did not have a receipt, Walmart issued a gift card to Ms. Graham for the

value of the returned items. Ms. Graham used this gift card to purchase the more

expensive of the wall mount kits, which she returned to the store the next day in exchange for approximately $100 in cash.

The State charged Ms. Graham with second degree trafficking in stolen property. Ms. Graham requested dismissal of the charge under CrR 8.3(c) and *State v. Knapstad,* 107 Wn.2d 346, 729 P.2d 48 (1986). The court agreed and dismissed the charge, finding there was no transfer or disposition of stolen property because "[t]he first transaction . . . consisted only of theft of a gift card by deception. . . . The second transaction . . . consisted only of use ("negotiation") of that property in its intended manner; using the gift card as cash." Clerk's Papers (CP) at 46.

The State appealed.

## ANALYSIS

The issue is whether the trial court erred by granting Ms. Graham's motion to dismiss. The State contends sufficient evidence existed to support the second degree trafficking in stolen property charge.

We review *Knapstad* rulings de novo. *State v. Conte,* 159 Wn.2d 797, 803, 154 P.3d 194 (2007). *Knapstad* created a pretrial process, akin to summary judgment motions in civil cases, that allows the trial court to dismiss a criminal case when the agreed upon facts show the prosecution's case is missing an element necessary to prove the charged offense. *Knapstad,* 107 Wn.2d at 356-57. The procedure to be followed for *Knapstad* motions is delineated by CrR 8.3(c).

2

In a *Knapstad* motion, a defendant alleges by sworn affidavit that there are no material disputed facts and that the undisputed facts do not establish a prima facie case of guilt. *Knapstad*, 107 Wn.2d at 356. When evaluating a *Knapstad* challenge to the sufficiency of the evidence, the trial court considers the evidence and reasonable inferences therefrom in the light most favorable to the State. *State v. Jackson*, 82 Wn. App. 594, 608, 918 P.2d 945 (1996).

"A person who recklessly traffics in stolen property is guilty of trafficking in stolen property in the second degree." RCW 9A.82.055(1). "'Traffic' means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." RCW 9A.82.010(19). "A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c). At issue is whether the wall mount kit and battery that Ms. Graham took to the customer service counter and the second wall mount kit that she returned for cash the next day were "stolen property" and, if so, whether they were trafficked. RCW 9A.82.055(1).

"'Stolen property' means property that has been obtained by theft, robbery, or extortion." RCW 9A.82.010(16). "Theft" requires intent to deprive the owner of such property. RCW 9A.56.020(1).

3

In granting the *Knapstad* motion, the trial court pointed out that the information in the case did not specify which transaction, or which segment of the overall transaction was alleged to constitute the trafficking crime. It therefore examined each phase of the transaction. We, too, examine each phase.

In relying on the first segment of the overall transaction—Ms. Graham's presentation of the less expensive wall mount kit and battery for "return," for which she received a gift card—the State asks us to consider the kit and battery as "stolen property" at the time Ms. Graham took them from Walmart's shelves and walked with them to the customer service area, and to consider her tender of them for cash or credit as the "trafficking" of stolen property. As the State correctly points out, a person may be guilty of theft whether or not they have yet left the store if the person intended to deprive the store of such property. *See, e.g., State v. Britten*, 46 Wn. App. 571, 572-74, 731 P.2d 508 (1986) (defendant put several jeans on under his own clothes and, although he had not yet left the store, he was guilty of theft because he intended to deprive the store of the items).

*Britten* is distinguishable, however, because "[t]here [was] no issue as to Britten's intent" to deprive the store of the property *Id.* at 573. Mr. Britten had removed the tags and concealed several pairs of jeans under his own clothing, evidencing his intent to deprive the store of the jeans themselves. *Id.* at 572-74. Ms. Graham never intended to deprive Walmart of the kit or battery. Since the merchandise that she intended to proffer for cash or credit was not "stolen" when brought to the customer service counter,

4

the first segment of the overall transaction did not amount to trafficking in stolen property.

*Grady v. State*, 319 Ga. App. 894, 743 S.E.2d 22 (2013) involved more factual similarities to this case than *Britten,* but the State charged a different crime. In *Grady,* the defendant was convicted of theft by shoplifting after he entered a store, presented two racquets to store personnel that he wished to return, received "return" stickers for the racquets to present to a customer service employee, left those racquets on store shelves and picked up two more expensive racquets, and then presented the more expensive racquets for return, relying on the "return" stickers. Although the customer service employee told the defendant there was a discrepancy between the barcode on the return stickers and the expensive racquets presented, the defendant became "'kind of hysterical' and angry" and, after consulting with loss prevention employees who in turn consulted with police, the store's manager instructed the customer service employee to issue the defendant a gift card in the full value of the expensive rackets. *Id.* at 895. The fact that the defendant presented the merchandise for return and received a gift card was evidence that he had concealed or taken possession of merchandise with the required statutory intent "to deprive the owner of possession thereof *or of the value thereof.*" *Id.* (emphasis added).

While Ms. Graham had dishonest intentions, the inexpensive kit and battery were not obtained by theft when she brought them to the customer service counter and requested cash or credit. She did not intend to deprive Walmart of those items; rather,

5

her intent was to obtain their value. Rather than trafficking in stolen property, her actions amount to theft, as recognized and appropriately charged in *Grady*.

Turning to the second segment of the overall transaction—Ms. Graham's return, for cash, of the mount kit purchased with the gift card—the issue is whether that second kit was "stolen property" that she trafficked by returning it. "Stolen property" is defined, again, as "property that is obtained by theft, robbery, or extortion." RCW 9A.82.010(16).

In *State v. Lillard*, 122 Wn. App. 422, 425-27, 93 P.3d 969 (2004), the defendant participated in a fraudulent scheme of purchasing low-value Nordstrom gift cards and then altering the number on the card's magnetic strip to match an account with a much larger balance. The cards were used to purchase merchandise found in defendant's possession, after which he was charged with possession of the stolen merchandise. While a number of issues were raised on appeal, the defendant did not challenge the characterization of the store's merchandise as stolen property. The decision therefore assumes but does not hold that the merchandise was stolen. The case is distinguishable from our facts because the altered cards in *Lillard* were not being negotiated at Nordstrom's expense and according to the card's terms, they were being negotiated contrary to the terms of the card, at the expense of an innocent account holder. Given its distinct facts and the absence of any analysis of what qualifies as "stolen property," *Lillard* is not helpful in deciding this case.

In *State v. Michelli*, 132 Wn.2d 229, 937 P.2d 587 (1997), our Supreme Court reversed a decision of this court and in the process discussed a Florida case, *Florida v.*

6

*Camp*, 579 So.2d 763 (Fla. Dist. Ct. App. 1991), *aff'd*, 596 So.2d 1055 (1992). The defendant in *Camp* had stolen blank checks from her workplace and negotiated them to pay off personal debt, which the Florida Supreme Court determined did not qualify as trafficking. But as *Michelli* explained, the reasoning of the Florida court was not that a trafficker must be a middleman, it was that *using* stolen property does not amount to *trafficking* in stolen property:

> Negotiating stolen checks merely involved personal use of stolen property and did not rise to the level of dealing, or trafficking, in stolen property. The trafficking statute "was not designed to punish persons who steal for personal use." *Camp*, 596 So.2d at 1057 (footnote omitted). The court noted, however, that its analysis "would not apply had [defendant] stolen *and sold blank checks for others to negotiate*." *Camp*, 596 So.2d at 1057 n.3 (emphasis added).

132 Wn.2d at 234-35.

In granting the *Knapstad* motion in this case, the trial court reasoned that Ms. Graham's use of the gift card to purchase the second wall mount kit did not amount to a separate theft "since defendant used the gift card as 'cash'":

> In other words, had defendant stolen $50 from her neighbor, using it to purchase the bracket would not constitute theft of the bracket. Furthermore, it does not constitute a "transfer" or "other disposition" of the gift card, in the sense of the definition of "trafficking," for the same reason, noted in *Michielli*, that the thief's negotiation of stolen blank checks in *Florida v. Camp* did not amount to a transfer of them. Had defendant sold the Wal-Mart gift card to a third person, who then used it to acquire property from Wal-Mart, a different conclusion would obtain.
> But here, the gift card amounts to this representation from Wal-Mart (even if fraudulently obtained): "You may use this card in exchange for Wal-Mart property of your choice." That is exactly what defendant did; she did not "transfer" the gift card to Wal-Mart or anyone else—rather, she used it in the way intended by Wal-Mart.

7

No. 31891-5-III
*State v. Graham*

CP at 30.

In order for Ms. Graham's second return of a wall mount kit to fall within the statutory definition, we would have to read the definition of "stolen property" to include not only property that is itself stolen, but also property that was acquired in a legitimate exchange but can be traced back through a series of exchanges to property that was obtained by theft, robbery or extortion. The plain language of the statutory definition of "stolen property" does not support such a reading nor could the legislature possibly have intended it.

Viewing the evidence and reasonable inferences therefrom in the light most favorable to the State, Ms. Graham did not sell or transfer stolen property to another person. The trial court properly dismissed the second degree trafficking in stolen property charge.

Affirmed.

WE CONCUR:

_____
Siddoway, C.J.

_____
Brown, J.

_____
Lawrence-Berrey, J.

8