FILED

**MARCH 21, 2017**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33987-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSHUA CALEB SNYDER, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| SHANE SAYER MORGAN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Shane Sayer Morgan appeals his convictions for second

degree theft, three counts of second degree identity theft, two counts of third degree theft,

and two counts of attempted third degree theft. Mr. Morgan argues (1) the evidence was

insufficient to convict him of any of the eight charges for which he was convicted, (2) the

trial court erred when it instructed the jury on various uncharged alternate means for

committing theft for counts 1, 3, 4, 6, and 8, (3) the trial court violated his constitutional

right to a unanimous jury verdict by not giving a unanimity instruction for counts 1, 3, 4,

6, and 8, (4) the trial court violated his constitutional right to a unanimous jury verdict by

not giving a unanimity instruction for count 2, (5) he was denied effective assistance of counsel when his attorney failed to object to the video of Josh Snyder's police interview, (6) the trial court erred at sentencing when it failed to treat counts 5 and 7 as the same criminal conduct, and (7) the trial court erred when it imposed a total term of confinement and community service that exceeds the statutory maximum. He also raises four separate arguments in his statement of additional grounds for review (SAG).

We agree with Mr. Morgan's second and seventh arguments, conclude the third is moot, but otherwise affirm. We therefore reverse his convictions on counts 1, 3, 4, 6, and 8, and remand for retrial on those counts.

## FACTS

### *Background facts*

On June 11, 2014, Maureen Webb lent her Chase Bank credit card to her daughter so she could purchase gas for her car. Hours later, Chase Bank fraud protection sent a text to Ms. Webb, asking if she made a recent purchase at Fred Meyer in Ellensburg. Ms. Webb then asked her daughter about the card. Her daughter said she did not make any purchases at Fred Meyer. She then looked for the card, and said she no longer had it. Ms. Webb called the police and reported her card was stolen.

2

The investigating officer obtained information from Chase Bank and learned the times of the Fred Meyer transactions. She then used those times and Fred Meyer video surveillance to determine that Mr. Morgan and Joshua Snyder had used Ms. Webb's missing credit card. The first video showed the men approaching a self-checkout kiosk with two drinks, Mr. Snyder scanning the drinks and the credit card, Mr. Morgan pushing buttons on the kiosk, Mr. Snyder retaining the credit card, and then each man walking away, each with one drink. The second video showed Mr. Snyder purchasing clothes and shoes at a check-out counter with the credit card, with Mr. Morgan standing close to the counter.

The investigating officer learned from Fred Meyer records that Ms. Webb's credit card was used at the store four times that day. The first time was the purchase of the two drinks for $4.61. The second time was the purchase of clothes and shoes for $539.23. The third time was an attempted purchase of an iPad for $538.92. The attempted purchase was declined. Twenty-two seconds after the card was first swiped, the card was again swiped in an attempt to purchase the same iPad. This second attempted purchase also was declined.

The investigation to obtain the previously described facts took several months. On March 1, 2015, the investigating officer interviewed Mr. Snyder and asked questions

3

about his June 2014 purchases at Fred Meyer with Mr. Morgan. Mr. Snyder denied being friends with Mr. Morgan, and said he did not even like Mr. Morgan. Mr. Snyder denied purchasing over $500 of clothes at Fred Meyer. He said he wished he had nice clothes, but he only had rags. Mr. Snyder also denied attempting to purchase an iPad. When confronted with the fact that the investigating officer had video surveillance of him using a stolen card at Fred Meyer, Mr. Snyder denied it was him.

*Charges and pretrial hearing*

The State charged Mr. Morgan and Mr. Snyder with 16 counts as being a principal or an accomplice to a series of thefts involving Ms. Webb's credit card. Mr. Snyder eventually pleaded guilty to some or all of the charges. Mr. Morgan chose to go to trial.

On the morning of trial, the State gave notice it intended to admit the video of Mr. Snyder's police interview. Mr. Morgan's attorney objected. The prosecutor said he would talk with defense counsel later and try to resolve his concerns. The trial court did not rule on the objection.

*Trial summary*

At trial, Ms. Webb, her daughter, and the investigating officer testified to the facts stated above. A Fred Meyer loss prevention specialist also testified. He testified about the contents of the June 2014 surveillance videos as summarized above. He also testified

4

the videos showed the two men walking together from one area of the store to another, and shopping together for men's apparel using one cart. He admitted Fred Meyer was paid by Ms. Webb's credit card company for the items purchased. In addition to these testimonies, the State played the video of Mr. Snyder's police interview. Mr. Morgan did not object.

The State also called Mr. Snyder, but as an adverse witness. Mr. Snyder said he found the credit card on top of a gas pump and took the card for his own use. He then drove his Jeep and picked up Mr. Morgan in Cle Elum, drove around, and just ended up approximately 30 miles away at Fred Meyer. He admitted he knew Mr. Morgan for approximately 10 years, and that they were friends and occasionally saw each other. He also testified that in those 10 years, he had never shopped with Mr. Morgan before. He explained Mr. Morgan probably pushed the buttons at the kiosk because he had a "brain fart" and probably could not remember how to use a self-service kiosk. Report of Proceedings at 199. He also testified that the clothes and shoes he purchased were for him and his brother. He said he did not recall using the card to try to purchase the iPad, and recalled he probably threw the card out the Jeep window later that night. He testified he pleaded guilty to various theft crimes involving Ms. Webb's card. When questioned by defense counsel, Mr. Snyder said Mr. Morgan did not know that the card was stolen.

5

After all the evidence was presented, the trial court held a jury instruction conference to discuss what instructions it should give the jury. During the conference, the State discussed amending the information to include all three of the statutory means for committing theft. Mr. Morgan objected on the basis that the State had only charged one of the three means in the information. The trial court overruled Mr. Morgan's objection, and instructed the jury on all three of the statutory means for committing theft.

The jury returned convictions on counts 1-8, and acquitted on counts 9-16. For ease of our analysis below, we set forth counts 1-8 below, and summarize in parentheticals their factual bases as noted in the final information:

Count 1: Second degree theft (stolen credit card)
Count 2: Second degree identity theft (unauthorized use of card)
Count 3: Third degree theft (purchase of drinks)
Count 4: Third degree theft (purchase of clothes)
Count 5: Second degree identity theft (unauthorized use of card for iPad)
Count 6: Attempted third degree theft (attempted purchase of iPad)
Count 7: Second degree identity theft (unauthorized use of card for iPad)
Count 8: Attempted third degree theft (attempted purchase of iPad)

*Sentencing*

At sentencing, Mr. Morgan argued the four felony convictions (counts 1, 2, 5 and 7) should be considered the same criminal conduct for purposes of calculating the current offense portion of his offender score. The trial court took the matter under advisement and later issued a memorandum decision stating that "each use of the credit card was a

6

distinctive act that furthered a different, distinct criminal purpose." Clerk's Papers (CP) at 590. The trial court calculated the current offense portion of Mr. Morgan's offender score consistent with its memorandum decision, and calculated a total offender score of 11. The trial court imposed a sentence of 57 months of confinement and 12 months of community custody, with a note that the total period of confinement and community custody could not exceed the statutory maximum. The trial court also denied Mr. Morgan's request for a drug offender sentencing alternative (DOSA) sentence.

## ANALYSIS

1. SUFFICIENCY OF THE EVIDENCE

Mr. Morgan first contends the evidence was insufficient to convict him of the offenses for which he was convicted.

Evidence is sufficient to convict if it permits a rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. *State v. Munoz-Rivera*, 190 Wn. App. 870, 882, 361 P.3d 182 (2015). This court "must draw all reasonable inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant." *Id.* Direct and circumstantial evidence carry the same weight. *Id.* Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."

No. 33987-4-III
*State v. Morgan*

*State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). An appellate court's role

is not to reweigh the evidence and substitute its judgment for that of the jury. *State v.*

*Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

      a.    *Count 1: Theft of credit card*

To find Mr. Morgan guilty of second degree theft, count 1, the jury had to find

each of the following proved beyond a reasonable doubt:

> (1)    That on or about June 11, 2014 the defendant
> (a)    wrongfully obtained or exerted unauthorized control over property of another; or
> (b)    by color or aid of deception, obtained control over property of another; or
> (c)    appropriated lost or misdelivered property of another;
> and
> (2)    That the property was [a credit card];
> (3)    That the defendant intended to deprive the other person of [a credit card]; and
> (4)    That this act occurred in the State of Washington.

CP at 336 (jury instruction 20).

Mr. Morgan argues the evidence was that Mr. Snyder wrongfully obtained or

appropriated the lost card. He argues his mere presence with Mr. Snyder in Fred Meyer

was insufficient evidence as a matter of law. He argues to support his conviction as an

accomplice, the State was required to present evidence he was "ready to assist" or

8

intended to encourage the conduct of Mr. Snyder. *See State v. Aiken*, 72 Wn.2d 306, 349, 434 P.2d 10 (1967).

The State responds that it presented sufficient evidence that Mr. Morgan exerted unauthorized control over the credit card. The State argues the jury could infer Mr. Morgan agreed to go with Mr. Snyder to Fred Meyer to purchase items with the credit card that Mr. Morgan knew was stolen. To support this inference, the State argues Mr. Snyder admitted he had known Mr. Morgan for 10 years, yet this was the first time the two ever shopped together. And for this first time shopping together, it was beyond coincidence that Mr. Snyder happened to have a stolen credit card.

Although Mr. Snyder testified Mr. Morgan did not know the card was stolen, the State argues the jury could have disbelieved him. Given Mr. Snyder's explanation that they just happened to drive 30 miles to Fred Meyer late at night, that his statements were very different from what he told the investigating officer, and the unusualness of purchasing or attempting to purchase a total of over $1,000 of goods, we agree the jury did not need to believe Mr. Snyder.

We note that Mr. Morgan pushed the buttons at the self-service kiosk and thus assisted Mr. Snyder in his theft of the drinks. We also note that Mr. Morgan was with Mr. Snyder throughout the store and was near him when the clothes and shoes were

purchased. A reasonable finder of fact could find the inferences advanced by the State, that it was not a mere coincidence that the two traveled to Fred Meyer in Ellensburg that night with a stolen or lost credit card. The State presented sufficient evidence for a jury to find Mr. Morgan, as an accomplice, exerted unauthorized control over the card and knew the card was stolen.

> b. *Counts 3, 4, 6 and 8: Third degree theft and attempted third degree theft*

Mr. Morgan argues there was no evidence the jury could find that Fred Meyer was the victim of the thefts. Mr. Morgan argues the jury instructions required the jury to find that Fred Meyer was the victim of the theft, and the loss prevention officer testified Fred Meyer did not sustain a loss.

The State accurately responds that the jury instructions did not identify the victim of the loss. The instructions merely required the jury to find Mr. Morgan intended to deprive the owner of the owner's property or services.

Mr. Morgan cites *State v. Graham*, 182 Wn. App. 180, 327 P.3d 717 (2014) for his argument that Fred Meyer was not a victim of theft. There, Chantell Graham removed items from a shelf at Wal-Mart, "returned" them to customer service and obtained a gift card. She used the gift card to purchase items, and later returned the items and obtained cash. In *Graham*, we held the facts did not establish trafficking in "stolen property," but

10

they did establish "theft." *Id.* at 185. *Graham* does not assist Mr. Morgan in this case, a case involving charges of theft.

     c.     *Counts 2, 5 and 7: Second degree identity theft*

Mr. Morgan reiterates his argument there were insufficient facts that he knew the credit card used by Mr. Snyder was stolen. We earlier rejected the argument.

    2.     INSTRUCTING ON ALTERNATIVE MEANS NOT CHARGED IN INFORMATION

Mr. Morgan contends the trial court erred when it instructed the jury on alternative means not charged relating to counts 1, 3, 4, 6 and 8, and reversal is required unless the State can show the error was harmless.

It is error for a trial court to instruct the jury on uncharged alternative means. *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 536, 309 P.3d 498 (2013) (citing *State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942)). When the charging document alleges only one alternative means of committing a crime, "it is error for the trial court to instruct the jury on uncharged alternatives, regardless of the strength of the trial evidence." *State v. Chino*, 117 Wn. App. 531, 540, 72 P.3d 256 (2003). When reviewing instructions to the jury on uncharged alternative means, this court presumes prejudice unless the State can show that the error was harmless. *Brockie*, 178 Wn.2d at 538-39; *Chino*, 117 Wn. App. at 540. This error may be harmless if other instructions specifically and clearly limit

11

the crime to the charged alternative. *Severns*, 13 Wn.2d at 548-49; *Chino*, 117 Wn. App. at 540.

The charging document states only the alternative means of "wrongfully obtain[ing] or exert[ing] unauthorized control" for counts 1, 3, 4, 6 and 8. CP at 304-07. The to-convict jury instructions include all three of the alternative means for committing theft. RCW 9A.56.020(1); CP at 336, 343. The jury instructions also include the definitions for all of the alternative means. Because the instructions do not "clearly and specifically" define the charged crime, the error is not harmless. It is possible that the jury convicted Mr. Morgan under the uncharged means. *Chino*, 117 Wn. App. at 540-41.

The State argues the underlying purpose of the rule is to provide the defendant notice of the crimes charged. The State argues the underlying purpose of the rule was satisfied here because Mr. Morgan obtained notice of the alternative means relied on when the State and Mr. Morgan debated amending the information during the jury instruction conference. The State provides no authority that a discussion that occurs after all the evidence is concluded satisfies the underlying purpose of notice. Mr. Morgan may have prepared his defense differently, and he may have questioned witnesses differently, had he been given earlier notice that the State intended to argue all three alternative

12

means for committing theft. We, therefore, reverse Mr. Morgan's convictions for counts

1, 3, 4, 6 and 8, and remand for retrial on those counts.

3.    FAILURE TO GIVE UNANIMITY INSTRUCTION FOR COUNTS 1, 3, 4, 6 AND 8

Mr. Morgan contends the trial court violated his right to a unanimous jury verdict

on counts 1, 3, 4, 6 and 8 when it failed to given an instruction on unanimity. Because of

how we resolved the last issue, this issue is moot. Further, because the evidence might be

different between the two trials, we decline to give an advisory opinion.

4.    FAILURE TO GIVE A UNANIMITY INSTRUCTION FOR COUNT 2

Mr. Morgan next argues the trial court violated his right to a unanimous verdict by

failing to give a unanimity instruction for second degree identity theft, as charged in count

2. This count relates to the purchases of the two drinks.

The State responds that second degree identify theft is not a multiple means crime,

citing *State v. Butler*, 194 Wn. App. 525, 374 P.3d 1232 (2016). Mr. Morgan agrees with

the State's citation to *Butler*, but contends his argument is a multiple *acts* argument, not a

multiple means argument. Mr. Morgan's argument is that the trial court was required to

give a unanimity instruction because the State argued that three separate acts could

support conviction on count 2.

13

Criminal defendants in Washington have a right to a unanimous jury verdict.

CONST. art. I, § 21; *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).

In multiple acts cases, the State must elect which of the acts it is relying on for a

conviction, or the court must instruct the jury to agree on a specific criminal act. *State v.*

*Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). Failure to give a necessary

unanimity instruction is constitutional error, and constitutional harmless error analysis

applies. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). In order to find

a constitutional error harmless, this court must find the error harmless beyond a

reasonable doubt. *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990). This court

can only overcome the presumption of error if no rational juror could have a reasonable

doubt as to any of the incidents alleged. *Coleman*, 159 Wn.2d at 512. This issue may be

raised for the first time on appeal. RAP 2.5(a); *Bobenhouse*, 166 Wn.2d at 892 n.4.

In count 2, the State charged Mr. Morgan with second degree identity theft as a

principal or accomplice for "knowingly obtain[ing] or possess[ing] a means of

identification or financial information of another person, living or dead, with the intent to

commit or to aid or abet any crime, to-wit: Maureen Webb's credit card." CP at 304. The

State did not argue there were multiple acts that supported count 2. Instead, the State

14

argued that Mr. Morgan committed count 2 as an accomplice when he assisted Mr.

Snyder's commission of crimes with the credit card, which Mr. Morgan knew was stolen.

### 5. INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Morgan next argues he was denied effective assistance of counsel when his

attorney failed to object during trial to the video of Mr. Snyder's police interview. Mr.

Morgan asserts that an objection would have been sustained on three possible bases:

(1) hearsay, (2) unduly prejudicial, and (3) improper rebuttal, given Mr. Snyder had yet to

testify.

A criminal defendant has a Sixth Amendment to the United States Constitution

right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86,

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel is

an issue of constitutional magnitude that may be considered for the first time on appeal."

*State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). The claim is reviewed de novo.

*State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective

assistance of counsel, a defendant must prove the following two-pronged test:

> (1) [D]efense counsel's representation was deficient, *i.e.*, it fell below an
> objective standard of reasonableness based on consideration of all the
> circumstances; and (2) defense counsel's deficient representation prejudiced
> the defendant, *i.e.*, there is a reasonable probability that, except for
> counsel's unprofessional errors, the result of the proceeding would have
> been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). There is a strong presumption that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). To rebut this presumption, the defendant bears the burden of establishing that no conceivable legitimate tactic exists to explain counsel's performance. *Id.*

We first note that defense counsel was aware of the potential evidentiary objections and did object during the pretrial conference. The prosecutor said he would discuss the objection with defense counsel and try to resolve it.

We next note that Mr. Snyder's statements during the police interview were statements of a coconspirator made during and in furtherance of the conspiracy, and therefore not hearsay under ER 801(d)(2)(v).[1] We also doubt an objection that the video was unduly prejudicial would have been sustained, given the relevance and inconsistency of Mr. Snyder's anticipated testimony. For these reasons, we conclude that Mr. Morgan's attorney was not deficient for failing to object at trial to the video of Mr. Snyder's police interview.

---

[1] Although the thefts were committed months prior, conspiracy extends to statements made to conceal the crime and avoid conviction. *United States v. Herrero*,

6.     SENTENCING ERROR—SAME CRIMINAL CONDUCT (COUNTS 5, 7)

Mr. Morgan contends that the trial court erred in sentencing when finding that counts 5 and 7 did not constitute the same criminal conduct. He argues that both attempts to purchase the iPad involved the same criminal intent, victim, time, and location.

A court may consider current convictions involving the same criminal conduct as one crime for sentencing purposes. RCW 9.94A.589(1)(a). "'A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law.'" *State v. Tili*, 139 Wn.2d 107, 122, 985 P.2d 365 (1999) (quoting *State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993)).

Same criminal conduct requires: (1) the same criminal intent, (2) commission at the same time and place, and (3) the same victim. RCW 9.94A.589(1)(a). "Although the statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act," there is one clear exception: the repeated commission of the same crime against the same victim over a short period. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

---

893 F.2d 1512, 1528 (7th Cir. 1990), *abrogated by United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990) (on other grounds).

Crimes may involve the same criminal intent if they were part of a "continuing, uninterrupted sequence of conduct." *Id.* at 186. When "an offender has time to 'pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act,' and makes the decision to proceed, he or she has formed a new intent to commit the second act." *Munoz-Rivera*, 190 Wn. App. at 889 (quoting *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997)).

Mr. Morgan and Mr. Snyder attempted to purchase an iPad with the stolen credit card. The first time the card was swiped, the transaction was declined. Twenty-two seconds after the first swipe, a second swipe occurred and the transaction was again declined. Mr. Snyder and Mr. Morgan had time to pause and reflect after the first transaction. In its memorandum decision, the trial court determined that "each use of the credit card was a distinctive act that furthered a different, distinct criminal purpose." CP at 590. Because of the discretion we give to trial courts in making these types of determinations, and because 22 seconds is a sufficient pause to consider the criminality of one's actions, we conclude the trial court did not abuse its discretion when it determined that both swipes were not the same criminal offense for purposes of sentencing.

18

*State v. Morgan*

7.     SENTENCING ERROR—EXCEEDS STATUTORY MAXIMUM

Mr. Morgan next argues the trial court sentenced him to a term of confinement in excess of the statutory maximum for class C felonies of 60 months, when it sentenced him to 57 months of confinement and 12 months of community custody and included a *Brooks*[2] notation. The State correctly concedes error.

A defendant may challenge sentencing error for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). A defendant's sentence cannot exceed the statutory maximum term for the class of crime for which the offender was convicted. RCW 9A.20.021(1). Terms of confinement and community custody are both included in the calculation of the statutory maximum term, and the combination of the two cannot exceed the statutory maximum. RCW 9.94A.505(5); *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). *Brooks* notations no longer comply with statutory sentencing requirements. *Boyd*, 174 Wn.2d at 472. The trial court must reduce the amount of community custody in order to avoid a sentence in excess of the statutory maximum. *Id.* at 473.

---

[2] *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 674, 211 P.3d 1023 (2009).

19

SAG ISSUE I: VINDICTIVE PROSECUTION

Mr. Morgan argues in his statement of additional grounds for review (SAG) that the State vindictively added several additional charges after Mr. Morgan refused to accept a plea deal.

The term prosecutorial vindictiveness describes the actions of the government when it "'acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights.'" *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006) (quoting *United States v. Meyer*, 258 U.S. App. D.C. 263, 810 F.2d 1242, 1245 (1987)). The action is vindictive only "'if *designed* to penalize a defendant for invoking legally protected rights.'" *Id.* (quoting *Meyer*, 810 F.2d at 1245). Prosecutorial vindictiveness may be actual or presumptive. *Id.* "A presumption of vindictiveness arises when a defendant can prove that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Id.* (quoting *Meyer*, 810 F.2d at 1246). Filing additional charges cannot support a presumption of vindictiveness without additional facts. *Id.* at 634.

Mr. Morgan fails to allege any facts other than the filing of additional charges in support of his argument. The record reflects that the State told Mr. Morgan during plea negotiations that potential additional charges existed, and the State was attempting to

20

work a "global resolution" with Mr. Morgan on this and another case. CP at 123. A long line of cases supports the State in this matter. *See State v. Bonisisio*, 92 Wn. App. 783, 790-92, 964 P.2d 1222 (1998) (finding no prosecutorial vindictiveness when the State charged the defendant with 10 additional counts after the defendant rejected a plea agreement); *State v. Lee*, 69 Wn. App. 31, 35-38, 847 P.2d 25 (1993) (finding no prosecutorial vindictiveness when the State increased the charge after defendant refused to plead guilty); *State v. Lass*, 55 Wn. App. 300, 306, 777 P.2d 539 (1989) (filing a more serious charge after the defendant elects to go to trial does not amount to prosecutorial vindictiveness); *State v. Fryer*, 36 Wn. App. 312, 316-17, 673 P.2d 881 (1983) (finding no prosecutorial vindictiveness when the prosecutor carried out a threat to file an additional charge against the defendant if he refused to plead guilty to two lesser charges); *State v. Serr*, 35 Wn. App. 5, 10-11, 664 P.2d 1301 (1983) (finding no prosecutorial vindictiveness when the State carried out a threat to file a habitual criminal charge against the defendant if he refused to plead guilty); *State v. Penn*, 32 Wn. App. 911, 913-14, 650 P.2d 1111 (1982) (finding no prosecutorial vindictiveness when the State filed additional charges after the defendant elected to go to trial). Mr. Morgan fails to show vindictiveness.

21

SAG ISSUE II: EVIDENTIARY ERROR

Mr. Morgan next contends the State did not establish a chain of custody before presenting exhibits at trial, specifically receipts and surveillance video. Mr. Morgan does not appear to argue that anyone fabricated or altered the evidence.

Mr. Morgan stipulated to the authenticity and admissibility of the receipts. Mr. Morgan also did not object to the admission of the surveillance videos at a pretrial hearing when given the opportunity, and the record reflects the parties admitted them by agreement.

This court may refuse to review unpreserved claims of error on appeal. RAP 2.5(a). Especially given the stipulation to the receipts and the agreement concerning the videos, we decline to review the asserted errors.

SAG ISSUE III: PROSECUTORIAL MISCONDUCT

Mr. Morgan next argues he was the victim of prosecutorial misconduct. He contends the misconduct happened when the State improperly questioned Mr. Lomax about what red flags two males shopping together might raise and also when the State made false statements of fact and law during closing arguments.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct

was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). However, a defendant waives any error by failing to object to the prosecutor's improper conduct, unless that conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Id.* at 760-61.

The record shows Mr. Morgan did object to the State's question about how often Mr. Lomax saw two older males shopping together. Mr. Morgan asserts such questions and argument by the prosecutor is an affront. The problem with Mr. Morgan's argument is there was no testimony that he and Mr. Snyder were romantically involved.

Mr. Morgan also asserts the prosecutor, during closing, misstated the law of accomplice liability and also misstated various facts. We reviewed the prosecutor's arguments made at the pages cited by Mr. Morgan. The prosecutor does not misstate the law of accomplice liability, and he did not argue Mr. Morgan was guilty because he was present with Mr. Snyder. Further, if there were misstatements of facts, which we do not see, they were not so flagrant that an instruction could not have cured any minimal prejudice.

23

SAG ISSUE IV: JUDICIAL MISCONDUCT

Mr. Morgan next argues the trial court committed judicial misconduct when it denied his CrR 7.4 motion for arrest of judgment and when it denied his request for a DOSA sentence.

1. *Arrest of judgment*

CrR 7.4(a)(3) allows a defendant to bring a motion for arrest of judgment for "insufficiency of the proof of a material element of the crime." Review of a trial court decision denying a motion for arrest of judgment requires the appellate court to engage in the same inquiry as the trial court. *State v. Longshore*, 141 Wn.2d 414, 420, 5 P.3d 1256 (2000). "The evidence presented in a criminal trial is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in a light most favorable to the [S]tate, could find the essential elements of the charged crime beyond a reasonable doubt." *Longshore*, 141 Wn.2d at 420-21 (citing *State v. Bourne*, 90 Wn. App. 963, 967-68, 954 P.2d 366 (1998)).

We earlier rejected Mr. Morgan's first argument on appeal and found there was sufficient evidence on each and every count. We also reject his argument that the trial court committed misconduct when it denied his motion for arrest of judgment.

24

2. *DOSA request*

Generally, a trial court's decision to deny a DOSA is not reviewable. *State v. Bramme*, 115 Wn. App. 844, 850, 64 P.3d 60 (2003); *State v. Smith*, 118 Wn. App. 288, 292, 75 P.3d 986 (2003); RCW 9.94A.585(1). However, "appellate review is still available for the correction of legal errors or abuses of discretion in the determination of what sentence applies." *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003). A trial court abuses its discretion when its decision is "manifestly unreasonable or based upon untenable grounds or reasons." *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). A decision is based on untenable grounds or made for untenable reasons when it was reached by applying the wrong legal standard. *State v. Quismundo*, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

A sentencing court shall waive the imposition of a standard range sentence in favor of a DOSA sentence "[i]f the sentencing court determines that the offender is eligible . . . and that the alternative sentence is appropriate." RCW 9.94A.660(3). The legislature has granted trial courts the discretion to impose a DOSA. *State v. Gronnert*, 122 Wn. App. 214, 226, 93 P.3d 200 (2004).

The trial court determined that a DOSA was inappropriate. It noted the following factors to show that the community would not benefit from a DOSA: no evidence that Mr.

25

No. 33987-4-III
*State v. Morgan*

Morgan's drug use caused him to commit these crimes, his lengthy criminal history that indicates an unwillingness to abide by the rules of society, and his failure to otherwise avail himself of treatment programs. These are tenable grounds or reasons for denial, well within the trial court's discretion in deciding whether an alternative sentence is appropriate.

APPELLATE COSTS

Mr. Morgan requests that this court not impose costs on appeal in the event the State prevails. This court generally awards costs to the party that substantially prevails. RAP 14.2. Of the eight charges that are the subject of this appeal, five will require retrial. We determine that the State has not substantially prevailed. For this reason, we do not award it appellate costs.

Affirmed in part, reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Siddoway, J.

26