IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, <br><br> Respondent, <br><br> v. <br><br> STEPHEN PALMER DOWDNEY JR., <br><br> Appellant. | No. 75416-5-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

DÍAZ, J. — Stephen Dowdney Jr. appeals his conviction for the armed robbery of a bank and the denial of his motion to dismiss with prejudice the underlying felony information filed in superior court. In his motion to dismiss, Dowdney contends that, for constitutional and statutory reasons, the commencement date of the deadline to begin his trial should have been 72 hours after the date he was charged in district court, not when he was subsequently arraigned in superior court. Dowdney also argues that it was an error for the court to impose a DNA fee, supervision fees, and interest on his legal financial obligations (LFOs). We affirm the trial court's denial of Dowdney's motion to dismiss and, thus, his conviction. However, we remand this matter to the

Citations and pin cites are based on the Westlaw online version of the cited material.

sentencing court to strike the DNA fee, the community custody fees, and any interest on his non-restitution LFOs.

## I.     FACTS

On March 11, 2016, Dowdney was arrested for, among other crimes, armed robbery of a bank with a knife and—what was later determined to be—a fake gun. Dowdney was booked into the Snohomish County Jail the same day.  On March 13, a district court commissioner ex parte found probable cause and set bail at $500,000 and other conditions of release.

The district court further ordered that, "if a Complaint is filed in District Court-Everett Division by 5:00 p.m. on March 15, 2016, the conditions of release including bail shall remain in effect until the Felony Dismissal Date as listed on the Complaint."  On March 14, Dowdney appeared before the district court, where the judge maintained the bail amount and conditions of release.  Dowdney further was permitted to proceed pro se and orally objected to "having this case filed into district court."

The next day, March 15, the State filed a felony criminal complaint in district court, with a felony dismissal date of April 1.  Dowdney was not arraigned at this or any point before a district court judge, nor did he have any type of preliminary hearing pursuant to CrRLJ 3.2.1(g)(1).  It is undisputed that this practice regularly occurs in Snohomish County.

On April 1, the State filed a new felony information in superior court, in which Dowdney was charged only with First Degree Robbery, and the district court charges were dismissed.  On April 4, Dowdney appeared before a Snohomish

County Superior Court judge for arraignment, but the court continued the matter after Dowdney requested to proceed pro se. On April 5, Dowdney renewed his request to proceed pro se, which was granted (with stand by counsel appointed), and was arraigned in superior court. His trial date was set for May 13, with his speedy trial expiration date of June 6, 2016.

On April 12, Dowdney filed a motion to dismiss the superior court information and, on April 21, the court heard Dowdney's motion, which contended his commencement date should not have been set for the date he was arraigned in superior court, but when charges were filed in district court. Dowdney argued the county's practice violated the criminal rules, his speedy trial rights under the Sixth Amendment, and the equal protection clause. The court denied his motion.

Thereafter, there were two short continuances of his trial date. On May 6, Dowdney objected to his trial date being moved, but signed an "agreed trial continuance" without waiver of his "previous arguments." On May 13, the court granted a second continuance (because the prosecutor was unavailable) over Dowdney's objection.

On June 6, Dowdney, still pro se, renewed his motion to dismiss, which was denied. The same day, he agreed to a stipulated bench trial and was found guilty. On June 20, Dowdney was sentenced to approximately 13 years confinement.

Dowdney appealed his conviction to this court for the first time. On October 15, 2018, this court dismissed Dowdney's appeal, agreeing with his counsel at the time that his claims, including his speedy trial claims, were frivolous.

Dowdney later filed a pro se personal restraint petition arguing this court's dismissal was improper. Matter of Dowdney, No. 80957-1-I, slip op. at 1 (Wash. Ct. App. Mar. 28, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/809571.pdf. On March 28, 2022, a panel of this court agreed, concluding that, because Dowdney identified "at least one nonfrivolous issue involving [LFOs]," it must reinstate his direct appeal and offer counsel. Dowdney, No. 80957-1-I, slip op. at 1 & 3. Dowdney was given leave to "brief the specific issues he wants to address in his reinstated direct appeal." Id. at 3. This appeal followed and Dowdney subsequently filed a statement of additional grounds.

## II.    ANALYSIS

### A.    Equal Protection

Dowdney contends that the Snohomish County Prosecutor's Office's practice of filing felony complaints in district court, then dismissing and re-filing a felony information in superior court per se (or, alternatively, without holding a preliminary hearing in district court) violates, first, the due process and equal protection clauses of the United States and of the Washington State constitutions.[1]

---

[1] The United States Supreme Court "explicitly rooted the limits of the police power in 'the guaranty of due process' that 'the law shall not be unreasonable, arbitrary or capricious.'" State v. Blake, 197 Wn.2d 170, 178, 481 P.3d 521 (2021) (quoting Nebbia v. People of New York, 291 U.S. 502, 525, 54 S. Ct. 505, 78 L. Ed. 940 (1934)). As acknowledged by his counsel at oral argument, Dowdney's due process clause claim, as it is based on the constitution's prohibition of *arbitrary* state action, is coterminous with his equal protection clause claim, which also prohibits arbitrary action. Wash. Court of Appeals oral argument, State v. Stephen Palmer Dowdney Jr., No. 75416-5-I (Jan. 18, 2023), at 1 min., 3 sec. through 1 min., 55 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-

Without any comment as to the wisdom of this practice as a matter of policy, we conclude that the county's charging practice does not violate the equal protection clause as presented and argued in this particular case.

    1. Law

Constitutional challenges are reviewed de novo. State v. Shultz, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999). Challenges based on the equal protection clause of the Washington State Constitution (Article 1, Section 12) are reviewed simultaneously with the equal protection clause of the U.S. Constitution. See, e.g., State v. Coria, 120 Wn.2d 156, 169, 839 P.2d 890 (1992) (citing CONST. art. I § 12). Under the equal protection clause of the Washington state constitution, "persons similarly situated with respect to the legitimate purpose of the law must receive like treatment." State v. Schaaf, 109 Wn.2d 1, 17, 743 P.2d 240 (1987).

Alleged violations of the Washington equal protection clause are examined under one of three standards: strict scrutiny, intermediate scrutiny, or rational basis. Westerman v. Cary, 125 Wn.2d 277, 294-95, 892 P.2d 1067 (1994).

Strict scrutiny applies when a classification affects a suspect class (such as race, alienage, or national origin) or a fundamental right. Schaaf, 109 Wn.2d at 17-18. "'Under the strict scrutiny test, a law may be upheld only if it is shown to be necessary to accomplish a compelling state interest.'" Westerman, 125 Wn.2d at 294-95, (quoting Schaaf, 109 Wn.2d at 17). Intermediate scrutiny may apply "in limited circumstances": such as to gender-based classifications and classifications

2023011374/?eventID=2023011374. Thus, this section will focus on the parties's proffered equal protection clause jurisprudence.

affecting "both an important right (such as the right to liberty) and a semi-suspect class not accountable for its status such as 'the poor'". Schaaf, 109 Wn.2d at 17-18. Intermediate scrutiny requires the challenged law "'fairly be viewed as furthering a substantial interest of the State.'" Id. at 17 (quoting Plyler v. Doe, 457 U.S. 202, 217-18, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982)).

Under the rational relationship test, "a law is subjected to minimal scrutiny and will be upheld 'unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective.'" Westerman, 125 Wn.2d at 294-95 (quoting Schaaf, 109 Wn.2d at 17).

Rational basis is used "whenever legislation does not infringe upon fundamental rights or create a suspect classification." Coria, 120 Wn.2d at 169 (citing State v. Smith, 93 Wn.2d 329, 336, 610 P.2d 869 (1980)). In other words, broadly speaking, our courts have applied rational basis review to equal protection challenges to many types of "classification[s]," which do not implicate suspect or semi-suspect classes, whether statutory, rule-based or practices based in executive department policies. State v. Berry, 31 Wn. App. 408, 411, 641 P.2d 1213 (1982) (citing Sparkman & McLean Co. v. Govan Inv. Trust, 78 Wn.2d 584, 588, 478 P.2d 232 (1970)). And such challenges have failed unless it is shown, beyond a reasonable doubt, that "such classification is manifestly arbitrary, unreasonable, inequitable, and unjust." Id.

For example, in Coria, our Supreme Court applied rational basis review to the legislature's decision to increase penalties for selling drugs near school bus stops because the statute's means (penalties) were rationally related to the goal

(discouraging drug sales near bus stops).  Coria, 120 Wn.2d at 171.  The court explained "[t]he rational basis test requires only that the statute's means is rationally related to its goal, not that the means is the best way of achieving that goal."  Id. at 173 (citing Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 316, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976)).

Similarly, this court applied rational basis review to the claims of an appellant who challenged a prosecuting office's decision, as reflected in policy, to give some drug offenders the retroactive benefit of a new, more lenient sentencing law while denying that benefit to others including appellant.  State v. Gaines, 121 Wn. App. 687, 704, 90 P.3d 1095 (2004).  In that case, although this court held that the appellant had established that he was similarly situated with other persons in the class, this court concluded that the State's "goal of saving [its] resources was rationally related to the means employed in the prosecutor's policy" and, thus, "Gaines' equal protection challenge to the prosecutor's policy fails."  Id. at 705-706.

In a case somewhat similar to the instant one, in Berry, the defendant claimed, and a trial judge agreed, that CrR 3.3(b) violated the equal protection clause because it distinguished unfairly between defendants who received preliminary hearings in district court (and were bound over to superior court, triggering potentially a later commencement date) and those who received no preliminary hearing in district court (and thus could be subject to an earlier commencement date).  Berry, 31 Wn. App. at 410.

This court first held that time-to-trial rules are not "fundamental" because

7

they do not provide "constitutional guaranties" and thus, need not be evaluated under the strict scrutiny test of the equal protection clause. Id. at 411. This court next held that, "In order to successfully attack a particular classification, it must be shown that such classification is manifestly arbitrary, unreasonable, inequitable, and unjust." Id. at 411-12 (citing Treffry v. Taylor, 67 Wn.2d 487, 408 P.2d 269 (1965); Kelleher v. Minshull, 11 Wn.2d 380, 119 P.2d 302 (1941); State v. Kitsap County Bank, 10 Wn.2d 520, 117 P.2d 228 (1941)) (stating, "the question is not whether the statute is discriminatory in nature, nor is it of paramount concern if the classification results in some inequality. The crucial determination is whether there are reasonable and justifiable grounds giving rise to the classification.").

The Berry court found that the function of a preliminary hearing was rationally related to giving prosecutors time to determine probable cause. Id. at 412. The court also considered whether prosecutorial misconduct would infringe upon the speedy trial right, but concluded that there was nothing in that record indicating misconduct by the prosecution or evidence of a suspect motive. Id. at 412-13. Thus, this court reversed, holding that there was not an equal protection violation simply because a court set a preliminary hearing in district court, which conceivably would have delayed the arraignment date, and thus, the commencement date later than a person who did not receive such a hearing. Id.

In short, where there is no claim that a suspect or semi-suspect class is implicated, equal protection clause challenges to classifications – whether statutory, rule-based or those grounded in prosecutorial policies – receive rational basis treatment, and will be upheld unless they are shown to be manifestly

8

arbitrary, unreasonable, inequitable, and unjust.

2. Application of Law to Facts

"Before the court will engage in an equal protection analysis, a defendant must first establish that he is similarly situated with other persons in a class." Gaines, 121 Wn. App. at 704. Dowdney asserts that he is in a class of detained people charged with felonies, and he argues he was treated differently than those detained persons charged directly in superior court because he was charged in district court (without receiving a preliminary hearing), dismissed in district court, and then re-charged in superior court, all of which extended his time in detention.

Dowdney compared his class and comparator class to those described in Gaines. Gaines, 121 Wn. App. at 704-705. However, here, Dowdney's class and his comparator class are much less clearly defined because people arrested for felonies are a vastly broader class than those described in Gaines, which encompassed a class of persons who committed (a) specific type of crimes and who did or did not receive (b) a specific retroactive sentence adjustment, (c) pursuant to a specific one-time policy. Id.

It is self-evident that people detained and ultimately charged with felonies encompass an extremely wide variety of situations, distinguishing it from the class in Gaines. Further, how long the class of persons who are charged in superior court is detained will vary greatly within the class. Likewise, how long the class of persons charged in district court is detained obviously varies greatly within that class. There is simply nothing in the record to help us define the classes remotely precisely, either in terms of the charges they face, the reasons why they are

9

charged in district court or in superior court, or how long they are detained in district or superior court before arraignment.

Even if Dowdney is similarly situated to others in some class and therefore is entitled to equal protection scrutiny, we must apply rational basis review. At oral argument, Dowdney made clear that he is not asserting that the county's practices should be subject to strict or intermediate scrutiny because he does not allege the practices implicate a suspect or semi-suspect class. Wash. Court of Appeals oral argument, supra, at 6 min., 47 sec. through 7 min., 48 sec. Furthermore, Dowdney's challenge to the county's practice does not implicate a fundamental right as there is no "constitutional guaranty" or non-statutory right to be tried within a designated time period. Berry, 31 Wn. App. at 411.

Under the rational basis test, "a law is subjected to minimal scrutiny and will be upheld 'unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective.'" Schaaf, 109 Wn.2d 1 at 17.

Respondent first asserts that the practice of charging an arrestee in district court before potentially charging the arrestee in superior court arises from the county's objectives to have sufficient time to gather information about the possible crime, and to make fully informed, accurate charging decisions. The State claims it routinely needs additional time to examine complicated charges, which often are present in felony-level crimes. In short, the county claims it implemented this practice to "get charging decisions right."

In response, Dowdney does not seriously contest that this charging process is relevant or "rests on" this stated objective or that the objective is legitimate.

10

<u>Westerman</u>, 125 Wn.2d at 294-95. Rather, Dowdney posits that the practice of filing in district court (or failing to hold a preliminary hearing) are meant solely to delay the start of the clock for timely trial. But, as in <u>Berry</u>, 31 Wn. App. at 412-13, he provides no evidence at all (a) of such intentional dilatory misconduct by the prosecutor or anyone else, or (b) again that the practice in fact caused any inordinate delay in an arrestee's process.

As to the latter, the only information Dowdney provided was the 2016 annual caseload report for courts of limited jurisdiction, showing not the outcomes or delays in time-to-trial, but simply the number of felony cases filed in district courts around the state. First, the State renewed its motion for this court to strike this report and other materials not presented to the trial court and not in the appellate record. Agree and strike those materials. However, even if we had denied that motion, we would have concluded that this record of generalized data is not sufficient to support the claim that the practice in fact caused any inordinate delay in an arrestee's process.

In short, the respondent has stated an adequate reason under equal protection jurisprudence for its practice to meet the rational review test, and it is not necessary to reach the other reasons it posits. Therefore, the State's practice does not violate the equal protection clause. We affirm the superior court order on Dowdney's motion to dismiss.

B.    CrR 3.3

Dowdney next argues the denial of his motion to dismiss is error because the start of his time-to-trial period was in violation of CrR 3.3(d)(3) and the Sixth

11

Amendment of the United States Constitution.[2]  We primarily will examine the plain language of the relevant court rules.

  1. <u>Law</u>

  Appellate review of an alleged violation of the right to a speedy trial is de novo.  <u>State v. Kenyon</u>, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009) (citing <u>State v. Carlyle,</u> 84 Wn. App. 33, 925 P.2d 635 (1996)).  The right to a speedy trial is found under the Sixth Amendment of the United States Constitution and Article I, Section 22 of the Washington State Constitution.  "The purpose underlying CrR 3.3 is to protect a defendant's constitutional right to a speedy trial."  <u>Kenyon</u>, 167 Wn.2d at 136.

  Application of a court rule to particular facts is reviewed de novo.  <u>State v. Kindsvogel</u>, 149 Wn.2d 477, 480, 69 P.3d 870 (2003).  Court rules are interpreted similarly to statutes.  <u>State v. Thomas</u>, 146 Wn. App. 568, 572, 191 P.3d 913 (2008).  The court initially looks at the plain language of the rule and construes the rule according to the drafter's intent.  <u>Gourley v. Gourley</u>, 158 Wn.2d 460, 466, 145 P.3d 1185 (2006).  If the rule's meaning is unambiguous, the court looks no further.  <u>Thomas</u>, 146 Wn. App. at 572 (citing <u>Spokane County v. Specialty Auto & Truck</u>

---

[2] In his counsel's opening brief, Dowdney argued that his right to a speedy trial under the Sixth Amendment was violated.  In his counsel's reply brief, Dowdney struck this argument, noting that he "is not claiming that his constitutional right to a speedy trial under the state or federal constitution was violated."  At oral argument, counsel for Dowdney clarified that the reply brief was not filed on behalf of his client, who maintains a Sixth Amendment claim.  Wash. Court of Appeals oral argument, <u>supra,</u> at 19 min., 27 sec. through 20 min., 27 sec.  Thus, we will examine both the rules-based and constitutional arguments here.

Painting, Inc., 153 Wn.2d 238, 249, 103 P.3d 792 (2004)).

In terms of the sanction for any violation of these rules, CrR 3.3(h) states that "[n]o case shall be dismissed for time-to-trial reasons except as expressly required by this rule, a statute, or the state or federal constitution." CrR 3.3(h); see also State v. Rookhuyzen, 148 Wn. App. 394, 398, 200 P.3d 258 (2009) ("The rule prohibits any dismissals for time-for-trial reasons unless expressly required by a rule, statute, or violation of a defendant's constitutional speedy trial rights.").

Turning to the rule in question, Rule 3.3 includes a provision that clearly states that the time for trial deadline starts after the arrestee is arraigned:

CrR 3.3(b)(1):

> [A] defendant who is detained in jail *shall* be brought to trial within the longer of
>    (i) 60 days after the commencement date specified in this rule
> . . .

(Emphasis added).

And:

CrR 3.3(c):

> *Initial Commencement Date.* The initial commencement date *shall* be the date of the arraignment as determined under CrR 4.1

(Emphasis added).

In other words, the express language of CrR 3.3 requires that the commencement date be the date of arraignment. Id.

2. Application of Law to Facts

Here, Dowdney's time-for-trial period commenced on the date he was arraigned in superior court, which is consistent with and indeed required by CrR 3.3. To state the obvious, the rule does not state that commencement may or

13

should begin when, or within 72 hours of when, a criminal complaint is filed in district court, as Dowdney claims. Thus, the State did not violate an express provision of CrR 3.3. On the contrary, it acted consistently with the rule.

In a case almost directly on point, in Thomas, the appellant contended his time for speedy trial should commence on the date he met his bail and was released instead of the date he was arraigned. Thomas, 146 Wn. App. at 572. This court rejected this argument, applying the then-recent amendments to CrR 3.3. Id. at 575-76. This court refused to "read into the rule any other reasons beyond those that are expressly stated in the rule." Id. at 573 (citing WASH. CTS. TIME-FOR-TRIAL TASK FORCE, FINAL REPORT § I.B at 6 (Oct. 2002) (on file with Admin. Office of the Courts), http://www.courts.wa.gov/programs_orgs/pos_tft). Finally, this court held that CrR 3.3 violations only lead to dismissal if the express rule is violated and, finding no express violation, denied dismissal. Thomas, 146 Wn. App at 575-76.

Similarly, here there is no express violation of a rule and dismissal is not warranted. In turn, this court does not need to reach other issues related to this rule-based argument.

We note, however, that, even if commencement should have been set, as Dowdney claims, within 72 hours of the date he was charged in district court (72 hours from March 15, i.e., March 18), Dowdney's trial was still set within the requisite time period considered "speedy"; namely, May 13, which was within 60 days of March 18. This was possible because his arraignment in superior court occurred well before the 14-day deadline of CrR 4.1(a)(1) and, indeed, shortly after

filing in superior court. In other words, there was simply not the lengthy delay Dowdney envisions, let alone one of "upwards" of 30 days.

The fact that two short continuances were granted do not affect the State's compliance with CrR 3.3. The dispute, if any, should instead be shifted to whether the trial court properly granted those continuances, one of which was on an agreed continuance form and the other due to unavailability of counsel. However, Dowdney does not brief how he was prejudiced in the presentation of his defense by those short continuances, as required by CrR 3.3(f)(2). Dowdney makes no showing in this case how his "access to discovery, ability to preserve defense evidence, and other issues related to ability to participate in [his] own defense" were remotely affected, particularly where he immediately thereafter agreed to a stipulated bench trial. Thus, we need not address any such argument here.

Therefore, we conclude that Dowdney has not shown that the county's practices violate CrR 3.3, and that Dowdney's right to a speedy trial was not violated by those court rules or any other provision of the United States or Washington State constitutions.[3]

C.     Statement of Additional Grounds

In addition to his attorney's briefing on appeal, Dowdney submitted a statement of additional grounds. Statements of additional grounds are permitted by RAP 10.10. They serve to ensure that an appellant can raise issues in their

---

[3] To the extent that Dowdney himself maintains a Sixth Amendment argument, such an argument is unavailing as there is no "constitutional guaranty" or non-statutory right to be tried within a designated time period. Berry, 31 Wn. App. at 411.

criminal appeal that may have been overlooked by their attorney. Recognizing the practical limitations many incarcerated individuals face when preparing their own legal documents, RAP 10.10(c) does not require that the statement be supported by reference to the record or citation to authorities. However, it does require that the appellant adequately "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). It also relieves the court of any independent obligation to search the record in support of the appellant's claims, making it prudent for the appellant to support their argument through reference to facts. RAP 10.10(c). To enable that factual support, it provides the means for appellants to obtain copies of the record from counsel. RAP 10.10(e).

In those sections of his statement of additional grounds for review which have not been addressed above or are not duplicative of his appellate counsel's arguments, Dowdney claims that it is unlawful to file felony charges in district court before dismissing and re-filing in superior court for reasons other than those listed in CrRLJ 3.2.1(g).

Dowdney's discussion of CrRLJ 3.2.1(g) referred to all subsections within subsection (g), except CrRLJ 3.2.1(g)(2). Under CrRLJ 3.2.1(g)(1):

> When a felony complaint is filed, the court *may* conduct a preliminary hearing to determine whether there is probable cause to believe that the accused has committed a felony *unless* an information or indictment is filed in superior court prior to the time set for the preliminary hearing. If the court finds probable cause, the court *shall* bind the defendant over to the superior court.

(Emphasis added).

Further, CrRLJ 3.2.1(g)(2) states:

> If at the time a felony complaint is filed with the district court the accused

16

is detained in jail or subjected to the conditions of release, the time from the filing of the complaint in district court to the filing of an information in superior court shall not exceed 30 days . . .

The district court found probable cause on March 13, 2016. At this point, CrRLJ 3.2.1(g)(1) does not *require* the district court hold a preliminary hearing, and the time for one had not been set. Dowdney's bail order and conditions of release stated that his bail conditions remained in effect until April 1, 2016, 18 days. The State's filing of a new felony information in superior court on April 1 was 18 days later, which is well within the time period allowed by CrRLJ 3.2.1(g)(2).

Therefore, the State did not violate CrRLJ 3.2.1(g) and we affirm the superior court's conviction.

D.      DNA, Supervision Fees, and Interest on Legal Financial Obligations

Both Dowdney and the State agree that, based on laws passed following his sentence, the superior court should not impose a $100 DNA fee, the payment of community supervision fees, or interest on all LFOs. We remand the judgment and sentence to the superior court to strike these fees and interest.

1. Law

A trial court's individualized assessment of ability to pay discretionary LFOs is reviewed de novo. State v. Ramirez, 191 Wn.2d 732, 740, 426 P.3d 714 (2018). In 2018, the state legislature passed House Bill 1783, making a standard DNA database fee for offenders no longer mandatory if the same fee had been collected from the same person for a prior conviction. Id. at 747. Additionally, a case is not yet final when amendments to a statute are enacted; a previously convicted person can benefit from the statutory change. Id. at 749. Furthermore, HB 1783 prohibits

trial courts from imposing discretionary LFOs on defendants who are indigent at the time of sentencing, id. at 748, and prohibits the accrual of interest on non-restitution LFOs, id. at 747. And finally, if a trial court only intends to impose mandatory LFOs, and a discretionary supervision fee is imposed, the appeals court can order it struck from a judgment and sentence. State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021).

    2. Application of Law to Facts

Dowdney was convicted and paid the $100 DNA fee in 2016 and the record shows the superior court only intended to impose minimum LFOs. The record shows that Dowdney was not required to pay a DNA fee because his sample was already on file. Both Dowdney and the State agree the DNA fee and non-restitution LFOs should be struck and remanded due to Dowdney's indigence.

Both further agree that the 2018 statute and Ramirez apply to these circumstances and Dowdney benefits from the statutory change because his case was pending appeal when the statute was enacted.

Finally, the record shows the superior court did not intend to impose supervision fees, even though there is a paragraph describing such fees on the judgment itself. Both parties attribute this paragraph to scrivener's error and ask the court to disregard it. On all counts, we agree.

III.    CONCLUSION

We affirm the trial court's denial of Dowdney's motion to dismiss and, thus, his conviction, but remand this matter to the sentencing court to strike the DNA fee, the community custody fees, and any interest on his non-restitution LFOs.

_Díaz, J._

WE CONCUR:

_Coburn, J._          _Bowman, J._